```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - -    X
                                 :
UNITED STATES OF AMERICA         :    SEALED INDICTMENT
                                 :
        - v. -                   :    21 Cr.  272
                                 :
SABITRI LAFOREST,                :
GARRY LAFOREST,                  :
TATIANA LAFOREST                 :
   a/k/a "Tatiana Mays," and     :
SANJAY LAFOREST,                 :
                                 :
        Defendants.              :
                                 :
- - - - - - - - - - - - - - -    X
```

**COUNT ONE**
**(Conspiracy to Commit Wire Fraud)**

The Grand Jury charges:

**OVERVIEW OF THE EMBEZZLEMENT SCHEME**

1.     From at least in or about 2013, up through and including in or about 2020, SABITRI LAFOREST ("SABITRI"), GARRY LAFOREST ("GARRY"), TATIANA LAFOREST, a/k/a "Tatiana Mays" ("TATIANA"), and SANJAY LAFOREST ("SANJAY"), the defendants, used SABITRI's position as the controller of an electrical contracting company ("Victim-1") to embezzle over \$17 million from Victim-1.

2.     As the controller of Victim-1, SABITRI had access to the company's bank accounts. The defendants used SABITRI's access to Victim-1's office expense account (the "Victim Bank Account") to make payments to a charge account that TATIANA

opened (the "Laforest Charge Account" or the "Account") at a credit card company (the "Credit Card Company").

3.    SABITRI, GARRY, and TATIANA were all cardholders on the Laforest Charge Account and regularly charged hundreds of thousands of dollars to the Account each month.  From at least in or about January 2013 through in or about October 2020, the Laforest Charge Account was paid off exclusively with money from the Victim Bank Account.

4.    In addition to making purchases on the Laforest Charge Account, the defendants used the Laforest Charge Account to make cash advances and to transfer large sums of money to other accounts and restaurant and hospitality businesses controlled by the defendants, in order to make money stolen from Victim-1 appear to be legitimate revenues generated by the defendants' businesses.  In an effort to further disguise the embezzlement scheme, the defendants also used the Laforest Charge Account to pay for costs associated with the defendants' restaurant and hospitality businesses--including SANJAY's companies, which operate under a certain d/b/a name ("Hospitality Group-1")--such as rent, food, and alcohol.

### RELEVANT INDIVIDUALS AND ENTITIES

5.    SABITRI is approximately 59 years old.  She is married to GARRY and is the mother of TATIANA and SANJAY.  From at least in or about 1992 through in or about October 2020, SABITRI was

Victim-1's controller.

6.    GARRY is approximately 64 years old.  He is married to SABITRI and is the father of TATIANA and SANJAY.

7.    TATIANA is approximately 36 years old.

8.    SANJAY is approximately 38 years old.

9.    SABITRI and GARRY own and operate a restaurant/catering company located in the vicinity of Elmont, New York ("Restaurant-1").

10.  Hospitality Group-1 is a group of restaurant and hospitality companies located in Manhattan, New York owned by SANJAY.  GARRY, TATIANA, and other members of the LAFOREST family have represented themselves as employees of Hospitality Group-1.  Hospitality Group-1 operates two restaurants in Manhattan.

11.  Victim-1 is an electrical contracting firm located in Manhattan, New York.

12.  The Credit Card Company is a global financial services company headquartered in Manhattan, New York, that offers, among other things, charge card services to its customers.

### MEANS AND METHODS OF THE EMBEZZLEMENT SCHEME

13.  SABITRI was an employee of Victim-1 from at least in or about 1986 up until her termination in or about October 2020. At all relevant times during the offense, SABITRI was Victim-1's controller.  As controller, she was responsible for all of

Victim-1's financials, such as payroll, accounting, and accounts payable and receivable. SABITRI was authorized to use Victim-1's bank accounts, including the Victim Bank Account, to pay certain company expenses.

14. In or about 2006, TATIANA opened the Laforest Charge Account. As a charge cardholder, TATIANA could use her charge card to make purchases at vendors that accept the Credit Card Company's card in exchange for paying off her charges at the end of the each of month. In or about November 2007, TATIANA added SABITRI to the Laforest Charge Account as a secondary cardholder who was given her own card and authorized to make charges on the Account.

15. From at least in or about 2013 through in or about 2020, TATIANA and SABITRI exclusively used the Victim Bank Account to pay off the Laforest Charge Account. Those payments were all routed through the Automated Clearing House ("ACH") network. Whenever TATIANA or SABITRTI authorized a payment to the Laforest Charge Account, the Credit Card Company would submit a request to debit the Victim Bank Account and credit the Credit Card Company's bank account through the ACH network. The Credit Card Company would in turn credit the Laforest Charge Account for paying its bill.

16. To authorize these payments, TATIANA and SABITRI either (a) called the Credit Card Company; (b) accessed the

4

Credit Card Company's website from a computer, including from Victim-1's offices in Manhattan, New York; or (c) accessed the Credit Card Company's mobile website or application ("app") from a mobile phone.

17. From at least in or about January 2013 up to and including at least in or about October 2020, SABITIRI, TATIANA, and GARRY--who was added as a secondary cardholder to the Laforest Charge Account in October 2013--charged approximately $17 million to the Account.

**THE DEFENDANTS' USE OF THE EMBEZZLED FUNDS**

18. The charges the defendants incurred on the Laforest Charge Account and paid off using the Victim Bank Account fell into three broad categories: (i) personal expenses; (ii) cash advances and cash transfers to other personal accounts; and (iii) transfers to and purchases on behalf of restaurant and hospitality companies owned and controlled by the defendants.

19. With respect to personal expenses, SABITRI, TATIANA, and GARRY used the Laforest Charge Account to charge, among other things, hundreds of thousands of dollars in purchases on travel, clothing, electronics, luxury goods, rent, and home improvements. For example: (a) between approximately 2013 and 2020, SABITRI, TATIANA, and GARRY charged at least approximately $639,000 in travel expenses with two airline companies to the Laforest Charge Account; and (b) between approximately 2015 and

5

2020, GARRY charged at least approximately $242,050 in tickets for a New York City professional basketball team to the Laforest Charge Account; (c) between approximately 2015 and 2020, GARRY, SABITRI, and TATIANA charged over approximately $250,000 in rent for two luxury apartments leased by SANJAY and TATIANA at a building in the vicinity of Hudson Yards in New York City to the Laforest Charge Account; (d) in or about 2020, SABITRI and GARRY spent at least approximately $100,000 on home improvements for a home they purchased in Parkland, Florida, by charging payments to the contractor to the Laforest Charge Account; and (e) in or about 2019 and 2020, SABITRI and GARRY purchased a 2019 Chevrolet Corvette ZR-1 and a 2020 Ford Shelby GT500 using the Laforest Charge Account.

20.   The defendants also used the Laforest Charge Account to steal cash directly from the Victim Bank Account through cash advances and electronic cash transfers to other financial accounts controlled by the defendants and other members of the Laforest family.  For example: (a) in or about 2020, TATIANA and another Laforest family member used TATIANA's charge card on the Laforest Charge Account to make over $132,000 in cash advances at ATMs located in Manhattan, New York, Long Island, New York, and Bayonne, New Jersey; (b) between approximately 2016 and 2020, GARRY and TATIANA incurred over $1.5 million in charges to an online payment processor ("Processor-1") on the Laforest

6

Charge Account, and directed the transfer of those funds to Processor-1 accounts controlled by SABITRI, TATIANA, SANJAY, and other Laforest family members; and (c) in or about 2020, SABITRI, GARRY, and SANJAY each opened an investment account with an online brokerage company ("Brokerage-1"), linked the Laforest Charge Account to their respective Brokerage-1 accounts, and made a total of over $200,000 in charges to Brokerage-1.

21.    The defendants also used their ownership and control of their restaurant businesses to further enrich themselves using the Victim Bank Account and to disguise the proceeds of their embezzlement scheme as legitimate business income. For example: (a) between approximately 2014 and 2017, SABITRI, GARRY, and TATIANA charged over $390,000 to Restaurant-1, using the Laforest Charge Account; (b) between approximately 2015 and 2020, GARRY charged over $2.1 million to Hospitality Group-1, using the Laforest Charge Account; (c) between approximately 2018 and 2020, TATIANA charged over approximately $345,000 to the Laforest Charge Account for purchases from a restaurant supplier used by Hospitality Group-1; and (d) in approximately 2020, TATIANA charged over approximately $112,000 in rent for Hospitality Group-1 to the Laforest Charge Account.

22.    In furtherance of the scheme to charge $2.1 million to Hospitality Group-1 using the Laforest Charge Account, SANJAY

7

used payment processor accounts for Hospitality Group-1 that he had opened with three payment processing companies ("Processors-2, -3, and -4"). These accounts allowed Hospitality Group-1 to accept credit cards for payment, including payments from the Laforest Charge Account.

23.    In or about approximately 2015, 2019, and 2020, Processors-2, -3, and -4 each respectively froze payments from the Laforest Charge Account to Hospitality Group-1 and asked SANJAY to provide documentation for those transactions to confirm their legitimacy. In order to convince Processors-2, -3, and -4, to release the frozen funds and allow him to continue using Hospitality Group-1's payment processing accounts, SANJAY misrepresented the nature of the transactions, for example, by claiming that the payments were made by fictitious clients of Hospitality Group-1.

## UNRAVELLING OF THE EMBEZZLEMENT SCHEME

24.    In or about September 2020, the Charge Company contacted Victim-1 and informed Victim-1 that the Victim Bank Account was being used to pay off significant charges for a charge card account associated with one of its employees, namely, SABITRI.

25.    On or about October 7, 2020, Victim-1 fired SABITRI after confronting her for misusing the Victim Bank Account.

26.    Victim-1's Bank retroactively clawed back from the

8

Charge Company approximately $714,000 in payments that TATIANA
made to the Laforest Amex Card using the Victim Bank Account
from in or about August 2020 through in or about September 2020.

### STATUTORY ALLEGATIONS

27.  From at least in or about 2013 up to and including at
least in or about 2020, in the Southern District of New York and
elsewhere, SABITRI LAFOREST, GARRY LAFOREST, TATITANA LAFOREST
a/k/a "Tatiana Mays," and SANJAY LAFOREST, the defendants, and
others known and unknown, willfully and knowingly, did combine,
conspire, confederate, and agree together and with each other to
commit wire fraud, in violation of Title 18, United States Code,
Section 1343.

28.  It was a part and object of the conspiracy that
SABITRI LAFOREST, GARRY LAFOREST, TATITANA LAFOREST a/k/a
"Tatiana Mays," and SANJAY LAFOREST, the defendants, and others
known and unknown, willfully and knowingly, having devised and
intending to devise a scheme and artifice to defraud and for
obtaining money and property by means of false and fraudulent
pretenses, representations, and promises, would and did transmit
and cause to be transmitted by means of wire, radio, and
television communication in interstate and foreign commerce,
writings, signs, signals, pictures, and sounds for the purpose
of executing such scheme and artifice, in violation of Title 18,
United States Code, Section 1343.

9

(Title 18, United States Code, Section 1349.)

### COUNT TWO
### (Wire Fraud)

The Grand Jury further charges:

29.    The allegations contained in paragraphs 1 through 26
of this Indictment are repeated and realleged as if fully set
forth herein.

30.    From at least in or about 2013 up to and including at
least in or about 2020, in the Southern District of New York and
elsewhere, SABITRI LAFOREST, GARRY LAFOREST, TATITANA LAFOREST
a/k/a "Tatiana Mays," and SANJAY LAFOREST, the defendants,
willfully and knowingly, having devised and intending to devise
a scheme and artifice to defraud, and for obtaining money and
property by means of false and fraudulent pretenses,
representations, and promises, did transmit and cause to be
transmitted by means of wire, radio, and television
communication in interstate and foreign commerce, writings,
signs, signals, pictures, and sounds, for the purpose of
executing such scheme and artifice, to wit, SABITRI, GARRY,
TATIANA, and SANJAY participated in a scheme to defraud Victim-1
by embezzling Victim-1's money from the Victim Bank Account, and
executed transactions to embezzle that money by means of causing
electronic bank payments to be made to the Laforest Charge
Account from the Victim Bank Account through telephone and the

10

internet.

      (Title 18, United States Code, Sections 1343 and 2.)

### COUNT THREE
### (Conspiracy to Commit Money Laundering)

    The Grand Jury further charges:

    31.  The allegations contained in paragraphs 1 through 26 of this Indictment are repeated and realleged as if fully set forth herein.

    32.  From at least in or about 2014 up to and including at least in or about 2020, in the Southern District of New York and elsewhere, SABITRI LAFOREST, GARRY LAFOREST, TATITANA LAFOREST a/k/a "Tatiana Mays," and SANJAY LAFOREST, the defendants, and others known and unknown, knowingly did combine, conspire, confederate, and agree together and with each other to violate Title 18, United States Code, Section 1956(a)(1)(B)(i).

    33.  It was a part and an object of the conspiracy that SABITRI LAFOREST, GARRY LAFOREST, TATITANA LAFOREST a/k/a "Tatiana Mays," and SANJAY LAFOREST, the defendants, and others known and unknown, knowing that the property involved in certain financial transactions represented the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such financial transactions, which in fact involved the proceeds of specified unlawful activity, to wit, the wire fraud scheme alleged in Counts One and Two of this Indictment, knowing that

11

      the transactions were designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Section 1956(h).)

**FORFEITURE ALLEGATIONS**

34. As a result of committing the offense alleged in Counts Two of this Indictment, SABITRI LAFOREST, GARRY LAFOREST, TATIANA LAFOREST, a/k/a Tatiana Mays, and SANJAY LAFOREST, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28 United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses and the following specific property:

a. Real property located on NW 70th Place in Parkland, Florida;

b. One 2019 Chevrolet Corvette ZR-1 bearing VIN 1G1Y42D9XK5801366;

c. One 2020 Ford Shelby GT500 bearing VIN 1FA6P8SJ6L5501627;

d.    $2,179,458.42 funds in the bank account with account number ending in 7466 at TD Bank, N.A., and any and all funds traceable thereto;

      e.    $178,000.00 in funds in the account with account number ending in 2215 at PayPal, Inc., and any all funds traceable thereto;

      f.    $311,600.00 in funds in the account with account number ending in 8115 at PayPal, Inc., and any all funds traceable thereto;

      g.    $189,250.00 in funds in the account with account number ending in 2586 at PayPal, Inc., and any all funds traceable thereto;

      h.    $14,880.00 in funds, stocks, bonds or other securities in the brokerage account with account number ending in 3075 at Stockpile, Inc., or in the clearing account with account number ending in 6446 at Apex Clearing Corp., and any all funds traceable thereto;

      i.    $167.578.11 in funds, stocks, bonds or other securities in the brokerage account with account number ending in 8873 at Stockpile, Inc., or in the clearing account with account number ending in 6024 at Apex Clearing Corp., and any all funds traceable thereto; and

      j.    $2000.00 in funds, stocks, bonds or other securities in the brokerage account with account number ending

13

in 2685 at Stockpile, Inc., or in the clearing account with account number ending in 0638 at Apex Clearing Corp., and any all funds traceable thereto.

35. As a result of committing the offense alleged in Count Three of this Indictment, SABITRI LAFOREST, GARRY LAFOREST, TATIANA LAFOREST, a/k/a Tatiana Mays, and SANJAY LAFOREST, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real and personal, involved in said offense, or any property traceable to such property, including but not limited to a sum of money in United States currency representing the amount of property involved in said offense and the following specific property:

a. Any and all funds in the bank account with account number ending in 7466 at TD Bank, N.A., and any and all funds traceable thereto;

b. Any and all funds in the bank account with account number ending in 5496 at TD Bank, N.A., and any and all funds traceable thereto;

c. Any and all funds in the bank account with account number ending in 8431 at Bank of America, N.A., and any and all funds traceable thereto;

14

      d.   Any and all funds in the bank account with account number ending in 6599 at UMB Bank, N.A., and any and all funds traceable thereto;

      e.   Any and all funds in the bank account with account number ending in 0895 at Valley National Bank, N.A., and any and all funds traceable thereto;

      f.   Any and all funds in the bank account with account number ending in 5129 at Bank of America, N.A., and any and all funds traceable thereto;

      g.   Any and all funds in the bank account with account number ending in 5161 at Bank of America, N.A., and any and all funds traceable thereto;

      h.   Any and all funds in the bank account with account number ending in 1070 at Citibank, N.A., and any and all funds traceable thereto;

      i.   Any and all funds in the bank account with account number ending in 3921 at Citibank, N.A., and any and all funds traceable thereto;

      j.   Any and all funds in the bank account with account number ending in 8548 at TD Bank, N.A., and any and all funds traceable thereto;

      k.   Any and all funds in the bank account with account number ending in 9163 at JP Morgan Chase Bank, N.A., and any and all funds traceable thereto;

l.   Any and all funds, stocks, bonds, or other securities in the clearing account with account number ending 3741 at Robinhood Securities LLC as clearing broker for Robinhood Financial LLC or in the cash management ACH account with account number ending 3741 managed by Robinhood Securities LLC and Robinhood Financial LLC, and any and all funds traceable thereteo; and

m.   Any and all funds, stocks, bonds, or other securities in the clearing account with account number ending 7108 at Robinhood Securities LLC as clearing broker for Robinhood Financial LLC, and any and all funds traceable thereteo.

### Substitute Asset Provision

36.   If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third party;

c.   has been placed beyond the jurisdiction of the court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be divided without difficulty;

16

it is the intent of the United States, pursuant to Title 21,

United States Code, Section  853(p) and Title 28, United States

Code, Section 2461(c), to seek forfeiture of any other property

of the defendant up to the value of the above forfeitable

property.

> (Title 18, United States Code, Sections 981 and 982;
> Title 21, United States Code, Section 853; and
> Title 28, United States Code, Section 2461.)

FOREPERSON

AUDREY STRAUSS
United States Attorney

17

Form No. USA-33s-274 (Ed. 9-25-58)

---

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.

SABITRI LAFOREST,
GARRY LAFOREST,
TATIANA LAFOREST
a/k/a "Tatiana Mays," and
SANJAY LAFOREST,

Defendants.

---

INDICTMENT

21 Cr.

(18 U.S.C. §§ 1343, 1349, 1956)

AUDREY STRAUSS
United States Attorney

Foreperson