```
N27MLAP1
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                          21 Cr. 272 (CM)(OTW)

GARRY LAFOREST,



              Defendant.

                          Plea
------------------------------x

                          New York, N.Y.
                          February 7, 2023
                          11:30 a.m.

Before:

                     HON. ONA T. WANG,

                         U.S. Magistrate Judge

                  APPEARANCES

DAMIAN WILLIAMS
    United States Attorney for the
    Southern District of New York
BY:  JUSTIN HORTON
    Assistant United States Attorney

THOMAS DUNN
    Attorney for Defendant

1              (Case called)

2              THE DEPUTY CLERK:  Please state your appearances for

3    the record.

4              MR. HORTON:  Good morning, your Honor.

5              Justin Horton, for the government.

6              MR. DUNN:  Good morning, your Honor.

7              Thomas Dunn, for Garry Laforest.

8              THE COURT:  Good morning.

9              Good morning, Mr. Laforest.

10              THE DEFENDANT:  Good morning.

11              THE COURT:  Please be seated.

12              As you heard earlier, I am Magistrate Judge Wang.

13              Mr. Laforest, I just wanted to confirm you are able to

14    speak and understand English, is that right?

15              THE DEFENDANT:  Correct.

16              THE COURT:  All right.  I have before me a Consent to

17    Proceed Before a United States Magistrate On a Felony Plea

18    Allocution that you have signed.  What this form says is that,

19    knowing you have the right to have your plea taken by a United

20    States district judge, you are agreeing to have the plea taken

21    by a United States magistrate judge.

22              As a magistrate judge, I have the authority to take

23    your plea with your consent, and you will still be entitled to

24    all of the same rights and protections as if you were before a

25    district judge.  Among other things, if you are found guilty,

1   you will be sentenced by a district judge.

2          Did you sign the consent to proceed before a United

3   States magistrate judge voluntarily?

4          THE DEFENDANT:  Yes, I did.

5          THE COURT:  And before you signed the form did your

6   lawyer explain it to you?

7          THE DEFENDANT:  Yes, he did.

8          THE COURT:  And do you wish to proceed with your plea

9   before a United States magistrate judge at this time?

10          THE DEFENDANT:  Yes.

11          THE COURT:  All right.  Your consent is accepted.

12          The purpose of this proceeding is to make sure that

13   you understand your rights, to decide whether you're pleading

14   guilty of your own free will, and to make sure you are pleading

15   guilty because you are guilty and not for some other reason.

16          Do you understand that?

17          THE DEFENDANT:  Yes.

18          THE COURT:  If at any time you don't understand any of

19   my questions or if you want to consult with your attorney, just

20   say so, because it is important that you understand every

21   question before you answer.

22          Before I take your plea, I must ask you a series of

23   questions, and I therefore need to place you under oath.

24          Please raise your right hand.

25          (Defendant sworn)

4

1         THE COURT:  All right.  You can put your hand down.

2         Mr. Laforest, do you understand that any statements

3  you make here today under oath may be used against you in a

4  prosecution for perjury or for making false statements if you

5  do not tell the truth?

6         THE DEFENDANT:  Yes.

7         THE COURT:  All right.  Please tell me your full name.

8         THE DEFENDANT:  Garry Laforest.

9         THE COURT:  And how old are you?

10        THE DEFENDANT:  67.

11        THE COURT:  All right.  Are you a citizen of the

12  United States?

13        THE DEFENDANT:  Yes, I am.

14        THE COURT:  All right.  Are you able to read and write

15  in English?

16        THE DEFENDANT:  Yes.

17        THE COURT:  And how far did you go in school?

18        THE DEFENDANT:  College.

19        THE COURT:  Did you finish college?

20        THE DEFENDANT:  No.

21        THE COURT:  Are you now or have you recently been

22  under the care of a doctor or psychiatrist for any reason?

23        THE DEFENDANT:  No.

24        THE COURT:  Have you been treated recently for any

25  mental illness or addiction to narcotic drugs of any kind?

 1                    THE DEFENDANT:  No.

 2                    THE COURT:  As you sit here today, are you under the

 3     influence of any mind altering drug or any alcoholic drink?

 4                    THE DEFENDANT:  No.

 5                    THE COURT:  Are you on any medication?

 6                    THE DEFENDANT:  Beside eye medication and high blood

 7     pressure.

 8                    THE COURT:  Okay.  So you are on eye medication that

 9     was prescribed by the eye doctor?

10                    THE DEFENDANT:  Right.

11                    THE COURT:  Okay.  That eye medication prescribed by

12     the eye doctor, does that affect your ability to understand

13     what is going on today?

14                    THE DEFENDANT:  No.

15                    THE COURT:  Okay.  Have you been able to understand

16     everything that I have said to you so far?

17                    THE DEFENDANT:  Yes.

18                    THE COURT:  And do you feel all right today?

19                    THE DEFENDANT:  Yes.

20                    THE COURT:  Have you seen a copy of the indictment in

21     this case?

22                    THE DEFENDANT:  Yes, I did.

23                    MR. DUNN:  Your Honor, if I could just interrupt for a

24     second.  He also mentioned blood pressure medication.  I don't

25     know --

```
 1              THE COURT:  I did not hear that.  Okay.

 2              So you are also on blood pressure medication?

 3              THE DEFENDANT:  Yes, I am.

 4              THE COURT:  And does that blood pressure medication

 5    affect your ability to understand anything that is going on

 6    today?

 7              THE DEFENDANT:  No.

 8              THE COURT:  All right.

 9              Have you read a copy of the indictment?

10              THE DEFENDANT:  Yes, I did.

11              THE COURT:  And you understand what it says that you

12    did?

13              THE DEFENDANT:  Yes.

14              THE COURT:  And have you had a chance to discuss the

15    charges and how you wish to plead with your attorney?

16              THE DEFENDANT:  Yes.

17              THE COURT:  And are you satisfied with your attorney's

18    representation of you?

19              THE DEFENDANT:  Yes.

20              THE COURT:  Have you had a full opportunity to discuss

21    this case with him?

22              THE DEFENDANT:  Yes, we did.

23              THE COURT:  And has he told you the consequence of

24    pleading guilty?

25              THE DEFENDANT:  Yes.
```

1           THE COURT:  And are you ready to enter a plea?

2           THE DEFENDANT:  Yes.

3           THE COURT:  Count Two of the indictment charges you

4    with wire fraud, in violation of 18 United States Code, Section

5    1343.

6           How do you wish to plead?  Guilty or not guilty?

7           THE DEFENDANT:  Guilty.

8           THE COURT:  With respect to the count charging you

9    with wire fraud, I want you to understand the maximum penalty

10   is a prison term of 20 years, a maximum term of supervised

11   release of three years, and a fine of as much as $250,000 or

12   twice what was made by the criminal activity or twice what

13   someone other than yourself lost because of the criminal

14   activity and a mandatory special assessment of $100.

15          In addition, the Court must order you to pay

16   restitution to any victims.

17          Do you understand these maximum penalties that I have

18   just described to you?

19          THE DEFENDANT:  Yes.

20          THE COURT:  I note that the plea agreement also states

21   that you admit the forfeiture allegations as well.

22          Do you understand that?

23          THE DEFENDANT:  Yes.

24          THE COURT:  All right.  Do you also understand that if

25   as part of your sentence you are placed on a term of supervised

8

1   release and you then violated any of the conditions of that

2   release, you could face an additional term of imprisonment?

3            Do you understand that?

4            THE DEFENDANT:  Yes.

5            THE COURT:  That means that the district judge can

6   revoke the term of release previously imposed and return you to

7   prison without giving you any credit for time previously served

8   on postrelease supervision.

9            You also told me earlier that you are a citizen of the

10  United States.  By law I still must tell you that if in fact

11  you are not a United States citizen a guilty plea means that

12  you may be removed from the United States and denied admission

13  to the United States or denied citizenship in the future.

14           Do you understand this?

15           THE DEFENDANT:  Yes.

16           THE COURT:  I am now going to explain certain

17  constitutional rights that you have.  These are rights that you

18  will be giving up if you enter a guilty plea.  Please listen

19  carefully to what I am about to say, and if you do not

20  understand something, please stop me and your attorney and I

21  will explain the issue more fully.

22           Do you understand that you have a right to plead not

23  guilty or, having already pleaded not guilty, persist in that

24  plea and that you have a right to a speedy and public jury

25  trial if you wish?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Do you understand that if you plead not

3  guilty and go to trial, you would be presumed innocent, and the

4  burden would be on the government to prove your guilt beyond a

5  reasonable doubt?

6          THE DEFENDANT:  Yes.

7          THE COURT:  That means that you would not have to

8  prove you were innocent, and you could not be convicted unless

9  a jury of 12 people unanimously agreed that you were guilty

10  beyond a reasonable doubt.

11          THE DEFENDANT:  Yes.

12          THE COURT:  Do you understand that you would be

13  entitled to be represented by an attorney at all stages, at

14  trial and at every other stage of the proceedings, and if you

15  could not afford to hire one, the Court would provide an

16  attorney to you for free?

17          Do you understand that?

18          THE DEFENDANT:  Yes.

19          THE COURT:  And do you understand that at such a trial

20  you would be entitled to confront and cross-examine any

21  witnesses called by government to testify against you, that you

22  would be entitled to testify on your own behalf, and that you

23  could call witnesses and present evidence, and that the Court

24  would issue subpoenas at your request to compel witnesses to

25  appear and testify in your defense even if they didn't want to

1    come?

2                Do you understand that?

3                THE DEFENDANT:  Yes.

4                THE COURT:  And do you understand that at a trial you

5    would not be required to testify against yourself?

6                THE DEFENDANT:  Yes.

7                THE COURT:  And if you chose not to testify that could

8    not be used against you.

9                Do you understand that if you were convicted at a

10   trial, you have a right to appeal that verdict to a higher

11   court?

12               THE DEFENDANT:  Yes.

13               THE COURT:  And do you understand that if you enter a

14   guilty plea you give up all of these rights, including your

15   right to a trial, that you will not be able to withdraw this

16   plea, and that the only remaining step in this case will be the

17   sentencing?

18               THE DEFENDANT:  Yes.

19               THE COURT:  And do you understand that the decision as

20   to the appropriate sentence in your case will be entirely up to

21   the sentencing judge and that they will be limited only by what

22   the law requires?

23               THE DEFENDANT:  Yes.

24               THE COURT:  And do you understand that even if you are

25   surprised or disappointed by your sentence you will still be

1     bound by your guilty plea?

2               THE DEFENDANT:  Yes.

3               THE COURT:  And, finally, if you do plead guilty, you

4     are also giving up the right not to incriminate yourself, and I

5     will ask you questions about what you did in order to satisfy

6     myself that you are actually guilty by pleading guilty.  You

7     will be admitting your factual as well as legal guilt.

8               Do you understand that?

9               THE DEFENDANT:  Yes.

10              THE COURT:  And knowing all of this, do you still wish

11    to plead guilty to Count Two of the indictment?

12              THE DEFENDANT:  Yes.

13              THE COURT:  And have any force or threats been used,

14    either direct or indirect, to influence how you plead today?

15              THE DEFENDANT:  No.

16              THE COURT:  All right.  I have before me a plea

17    agreement dated January 26, 2023, from the U.S. attorney to

18    your attorney containing a plea agreement.

19              Have you read this letter?

20              THE DEFENDANT:  Yes.

21              THE COURT:  And did you sign it on the last page?

22              THE DEFENDANT:  Yes, I did.

23              THE COURT:  And before you signed it, did you discuss

24    it with your attorney?

25              THE DEFENDANT:  Yes.

1          THE COURT:  And did he explain to you all of its terms

2     and conditions?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Apart from what is contained in this

5     letter, have any promises been made to you in order to get you

6     to plead guilty?

7          THE DEFENDANT:  No.

8          THE COURT:  In reviewing this plea agreement, I note

9     that it contain an analysis of how part of our law of

10    sentencing known as the sentencing guidelines may impact on any

11    prison term in your case.  Based on that analysis, the

12    agreement states that the guidelines sentencing range can be

13    expected to be from 51 to 63 months.

14          Do you understand that?

15          THE DEFENDANT:  Yes.

16          THE COURT:  And do you understand that the sentencing

17    judge is not bound by the calculation in the letter and that

18    they will be free to do their own calculation which may result

19    in a guideline range that is different from the one in this

20    letter?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Do you understand that no matter what

23    sentencing range the sentencing judge believes is called for by

24    the guidelines, that range is just one of many factors that the

25    judge will consider in determining your sentence?

1          THE DEFENDANT:  Yes.

2          THE COURT:  And that the judge has the discretion to

3     give you a prison sentence below or above the range, anywhere

4     up to the maximum sentence of imprisonment of 20 years?

5          Do you understand that?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Do you also understand that under the

8     terms of this plea agreement, if the judge sentences you to a

9     prison term that is 63 months or less, you are giving up your

10    right to appeal that sentence or to challenge it in any other

11    way such as through a writ of habeas corpus?

12         Do you understand that?

13         THE DEFENDANT:  Yes.

14         THE COURT:  Also, do you understand that the plea

15    agreement says you cannot appeal any fine that is $200,000 or

16    less and that you cannot appeal any lawful sentence of

17    supervised release?

18         THE DEFENDANT:  Yes.

19         THE COURT:  Do you also understand that in this letter

20    you are giving up your right to complain if the government

21    withheld evidence from your attorney that would have been

22    helpful to you?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Is your plea voluntary, that is, made of

25    your own free will?

1          THE DEFENDANT:  Yes, it is.

2          THE COURT:  Have any threats been made to influence

3    how you plead today?

4          THE DEFENDANT:  No.

5          THE COURT:  And did you in fact commit the offense

6    that is charged in Count Two of the indictment?

7          THE DEFENDANT:  Yes.

8          THE COURT:  And before I ask you to tell me what you

9    did, I will ask the government to summarize the elements of the

10   offense and, if they wish, to tell me any evidence they would

11   have offered at trial.

12         MR. HORTON:  Thank you, your Honor.

13         To establish a violation of Count Two of the

14   indictment, which charges Title 18 U.S. Code, Section 1343, at

15   trial, the government would be required to prove the following

16   elements beyond a reasonable doubt:

17         First, that there was a scheme or artifice to defraud

18   or obtain on money or property by materially false and

19   fraudulent pretenses, representations, or promises;

20         Second, that the defendant knowingly and willfully

21   participated in the scheme or artifice to defraud with

22   knowledge of its fraudulent nature and with specific intent to

23   defraud; and

24         Third, that in the execution of that scheme, the

25   defendant used or caused the use of interstate wires.

1          The government would also be required to prove venue

2    by a preponderance of the evidence.

3          Had this case gone to trial, the government would have

4    put forth the following evidence:  Witness testimony, and

5    records from the victim company regarding Sabitri Laforest's

6    role as company controller; her access to and unauthorized use

7    of the victim's bank account to embezzle $17.1 million;

8    financial records showing that the $17.1 million in charges on

9    the defendant's charge card account was paid off by Sabitri

10   Laforest using the victim company's bank account?  Evidence

11   from business records and the defendant's e-mail and iCloud

12   accounts showing the charges the defendants, primarily Garry,

13   incurred on the charge card account and paid off using the

14   company's money; witness testimony regarding Garry Laforest's

15   direction to spend money from the charge card at businesses

16   owned by immediate family members; text messages showing the

17   defendants discussing the charge card account and what to do

18   after the scheme unraveled; IP information showing that the

19   charge card bill was paid off from an office in Manhattan; and

20   testimony and records from the charge card provider showing

21   that the charge card provider processes payments to credit

22   cards outside of New York State.

23          Evidence would show that venue is appropriate in the

24   Southern District of New York, because the victim company was

25   based in Manhattan and the charge card bill was paid from an

 1   office in Manhattan.

 2          THE COURT:  All right.

 3          Mr. Laforest, please tell me in your own words what

 4   you did that makes you guilty of the charge against you.

 5          THE DEFENDANT:  I participated with my wife in

 6   embezzling money from Atlas-Acon and putting it to our account

 7   and using the credit card to buy, purchase whatever needs we

 8   had by internet and phone, and I also was aware of the

 9   illegality of my conduct.

10          THE COURT:  All right.

11          Does the government represent that it has sufficient

12   evidence to establish Mr. Laforest's guilt beyond a reasonable

13   doubt?

14          MR. HORTON:  Yes, your Honor.

15          THE COURT:  Mr. Dunn, do you know of any reason why

16   your client should not be permitted to plead guilty?

17          MR. DUNN:  No, your Honor.

18          THE COURT:  And does counsel have any doubt as to his

19   client's competence to plead at this time?

20          MR. DUNN:  None, your Honor.

21          THE COURT:  I wanted to make sure, I think I heard

22   Mr. Laforest say this, but Southern District of New York venue

23   is satisfied by the victim company being in New York City, is

24   that right?

25          THE DEFENDANT:  Correct.

1        THE COURT:  And, again, I wanted to confirm,

2  Mr. Laforest, did you know that what you were doing was against

3  the law?

4        THE DEFENDANT:  Yes, it was against the law.

5        THE COURT:  Are there any further questions either

6  side wants me to ask?

7        MS. NEWMAN:  No, your Honor.

8        THE COURT:  Is there any reason why I should not

9  recommend that the district judge accept this plea?

10        MR. DUNN:  No, your Honor.

11        MR. HORTON:  No, your Honor.

12        THE COURT:  And I will note again that Ms. Laforest,

13  Mr. Laforest's wife, is in the courtroom in the gallery here

14  with her husband.

15        On the basis of the defendant's responses to my

16  questions and my observation of his demeanor, I find that he is

17  fully competent to enter an informed plea at this time.  I also

18  conclude that he understands the nature of the charges and the

19  consequences of his plea.  And, finally, I am satisfied that

20  his plea is voluntary and that there is a factual basis for it.

21        Accordingly, I recommend that the proffered plea to

22  Count Two of the indictment be accepted.

23        I assume the government will order a copy of the

24  transcript and will submit it to Judge McMahon together with

25  any additional paperwork so that she may act on my

1    recommendation.

2              A presentence investigation report is ordered.

3              Should we set the same control date of May 8?

4              MR. HORTON:  Yes, your Honor.

5              MR. DUNN:  Yes, your Honor.

6              THE COURT:  Okay.  A control date of May 8 is set.

7              The prosecution case summary for purposes of the

8    presentence report is to be delivered to the probation

9    department no later than 14 days from today.

10             Mr. Dunn, please make yourself available to be

11   interviewed by the probation department with your client no

12   later than 14 days from today.

13             MR. DUNN:  Yes, your Honor.

14             THE COURT:  All right.

15             Is there anything further on this matter from either

16   side?

17             MR. HORTON:  No, your Honor.  Thank you.

18             MR. DUNN:  No, your Honor.

19             THE COURT:  All right.  Thank you very much.

20             We are adjourned.

21             (Adjourned)

22

23

24

25

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4            v.                         21 Cr. 272 (CM)(OTW)

 5   SABITRI LAFOREST,

 6

 7                  Defendant.

 8                                       Plea
     ------------------------------x
 9
                                         New York, N.Y.
10                                       February 7, 2023
                                         11:05 a.m.
11

12   Before:

13
                        HON. ONA T. WANG,
14
                                         U.S. Magistrate Judge
15
                            APPEARANCES
16
     DAMIAN WILLIAMS
17        United States Attorney for the
          Southern District of New York
18   BY:  JUSTIN HORTON
          Assistant United States Attorney
19
     DONNA R. NEWMAN
20        Attorney for Defendant

21

22

23

24

25
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

```
 1              (Case called)

 2              THE DEPUTY CLERK:  Please state your appearances for

 3    the record.

 4              MR. HORTON:  Good morning, your Honor.

 5              Justin Horton, for the government.

 6              THE COURT:  Good morning.

 7              MS. NEWMAN:  Good morning, your Honor.

 8              Donna R. Newman, on behalf of Sabitri Laforest, who is

 9    seated next to me.

10              Thank you, your Honor.

11              THE COURT:  All right.  Good morning.

12              MS. NEWMAN:  We are here to withdraw our previously

13    entered plea of not guilty and to enter a plea of guilty

14    pursuant to a plea agreement.  We would be pleading to Count

15    Two of the indictment.

16              THE COURT:  Okay.  We'll get to all of that.

17              Good morning, Ms. Laforest.

18              THE DEFENDANT:  Good morning.

19              THE COURT:  Please be seated.

20              All right.  I am magistrate Judge Wang.

21              Ms. Laforest, are you able to read and understand

22    English?

23              THE DEFENDANT:  Yes.

24              THE COURT:  Ms. Newman, please move the microphone

25    closer to Ms. Laforest's mouth and make sure it's on.
```

1          THE DEFENDANT:  That's good.

2          MS. NEWMAN:  Okay.

3          THE COURT:  All right.  I have before me a Consent to

4     Proceed Before a United States Magistrate Judge On a Felony

5     Plea Allocution that you have signed.

6          What this form says is that, knowing that you have the

7     right to have this plea taken by a United States magistrate

8     judge.  I mean, I'm sorry, what this form says is that, knowing

9     that you have the right to have the plea taken by a United

10    States district judge, you are agreeing to have the plea taken

11    by a United States magistrate judge.

12         As a magistrate judge I have the authority to take

13    your plea with your consent, and you will still be entitled to

14    all of the same rights and protections as if you were before a

15    district judge.  Among other things, if you are found guilty,

16    you will be sentenced by a district judge.

17         Did you sign this consent to proceed before a United

18    States magistrate voluntarily?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Before you signed the form did your lawyer

21    explain it to you?

22         THE DEFENDANT:  Yes.

23         THE COURT:  And did you wish to proceed with your plea

24    before a United States magistrate judge?

25         THE DEFENDANT:  Yes.

 1                THE COURT:  The consent is accepted.

 2                The purpose of this proceeding is to make sure that

 3      you understand your rights, to decide whether you are pleading

 4      guilty of your own free will, and to make sure you're pleading

 5      guilty because you are guilty and not for some other reason.

 6                Do you understand that?

 7                THE DEFENDANT:  Yes.

 8                THE COURT:  If at any time you don't understand any of

 9      my questions or if you want to consult with your attorney, just

10      say so, because it is important that you understand every

11      question before you answer.

12                Before I take your plea, I must ask you a series of

13      questions, and I therefore need to place you under oath.

14                Please raise your right hand.

15                (Defendant sworn)

16                THE COURT:  All right.  Put your hand down.

17                Do you understand that any statements you make here

18      today under oath may be used against you in a prosecution for

19      perjury or for making false statements if you do not tell the

20      truth?

21                THE DEFENDANT:  Yes.

22                THE COURT:  All right.

23                Please tell me your full name.

24                THE DEFENDANT:  Sabitri Laforest.

25                THE COURT:  And how old are you?

1                    THE DEFENDANT:  61.

2                    THE COURT:  And are you a citizen of the United

3     States?

4                    THE DEFENDANT:  No.

5                    THE COURT:  All right.

6                    What country are you a citizen of?

7                    THE DEFENDANT:  Guyana.

8                    THE COURT:  And are you able to read and write in

9     English?

10                   THE DEFENDANT:  Yes.

11                   THE COURT:  And how far did you go in school?

12                   THE DEFENDANT:  College.

13                   THE COURT:  Did you finish college?

14                   THE DEFENDANT:  Yes.

15                   THE COURT:  Did you finish college in Guyana or in the

16    United States?

17                   THE DEFENDANT:  In the United States.

18                   THE COURT:  Okay.  And are you now or have you

19    recently been under the care of a doctor or psychiatrist for

20    any reason?

21                   THE DEFENDANT:  No.

22                   THE COURT:  Have you been treated recently for any

23    mental illness or addiction to narcotic drugs of any kind?

24                   THE DEFENDANT:  No.

25                   THE COURT:  And as you sit here today, are you under

6

1   the influence of any mind altering drug or any alcoholic drink?

2           THE DEFENDANT:  No.

3           THE COURT:  And are you on any medication?

4           THE DEFENDANT:  No.

5           THE COURT:  Are you able to understand everything that

6   I have said to you so far?

7           THE DEFENDANT:  Yes.

8           THE COURT:  Do you feel all right today?

9           THE DEFENDANT:  Yes.

10          THE COURT:  Have you seen a copy of the indictment in

11  this case?

12          THE DEFENDANT:  Yes.

13          THE COURT:  And have you read it?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Do you understand what it says that you

16  did?

17          THE DEFENDANT:  Yes.

18          THE COURT:  And have you had a chance to discuss the

19  charges and how you wish to plead with your attorney?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Are you satisfied with your attorney's

22  representation of you?

23          THE DEFENDANT:  Yes.

24          THE COURT:  And have you had a full opportunity to

25  discuss this case with her?

1          THE DEFENDANT:  Yes.

2          THE COURT:  And has she told you the consequences of

3     pleading guilty?

4          THE DEFENDANT:  Yes.

5          THE COURT:  And are you ready to enter a plea today?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Count Two of the indictment charges you

8     with substantive wire fraud.

9          How do you wish to plead to that charge?

10          THE DEFENDANT:  Guilty.

11          THE COURT:  With respect to the count charging you

12     with wire fraud, I want you to understand that the maximum

13     penalty is a prison term of 20 years, a maximum term of

14     supervised release of three years, and a fine of the greatest

15     of $250,000 or twice what was made by the criminal activity or

16     twice what someone other than yourself lost because of the

17     criminal activity, a mandatory special assessment of $100, and

18     in addition the Court must order you to pay restitution to any

19     victims.

20          Do you understand these maximum penalties as I have

21     just described them to you?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Okay.  The plea agreement also states that

24     you are admitting the forfeiture allegations.

25          Do you understand that?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Do you also understand that if as part of

3    your sentence you are placed on a term of supervised release

4    and you then violated any of the conditions of that release,

5    you could face an additional term of imprisonment?

6          Do you understand that?

7          THE DEFENDANT:  Yes.

8          THE COURT:  That means that the district judge can

9    revoke the term of release previously imposed and return you to

10   prison without giving you any credit for time previously served

11   on postrelease supervision.

12          All right.  Because you stated that you are not a

13   United States citizen, do you understand that your guilty plea

14   may result in your being removed from the United States, denied

15   citizenship and denied admission to the United States in the

16   future?

17          Do you understand that?

18          THE DEFENDANT:  Yes.

19          THE COURT:  And do you understand that you're bound by

20   your guilty plea regardless of the immigration consequences of

21   your plea and regardless of any advice you have received from

22   your counsel or others regarding those consequences?

23          THE DEFENDANT:  Yes.

24          THE COURT:  And have you specifically discussed the

25   immigration consequences with your attorney?

1          THE DEFENDANT:  Yes.

2          THE COURT:  I am now going to explain certain

3    constitutional rights that you have.  These are rights that you

4    will be giving up if you enter a guilty plea.  Please listen

5    carefully to what I am about to say, and if you do not

6    understand something, stop me and your attorney and I will

7    explain the issue more fully.

8          Do you understand that you have the right to plead not

9    guilty or, having already so pleaded, to persist in that plea

10   and that you have a right to a speedy and public jury trial if

11   you wish?

12         Do you understand that?

13         THE DEFENDANT:  Yes.

14         THE COURT:  Do you understand that if you plead not

15   guilty and go to trial, you would be presumed innocent, and the

16   burden would be on the government to prove your guilt beyond a

17   reasonable doubt?

18         Do you understand that?

19         THE DEFENDANT:  Yes.

20         THE COURT:  That means that you would not have to

21   prove you were innocent, and you could not be convicted unless

22   a jury of 12 people unanimously agreed that you were guilty

23   beyond a reasonable doubt.

24         THE DEFENDANT:  Yes.

25         THE COURT:  Do you understand that you would be

1  entitled to be represented by an attorney at all stages at

2  trial and at every other stage of the proceedings, and if you

3  could not afford to hire one, the Court would provide an

4  attorney to you for free?

5          Do you understand that?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Do you understand that at such a trial you

8  would be entitled to confront and cross-examine any witnesses

9  called by the government to testify against you, that you would

10  be entitled to testify on your behalf, that you could call

11  witnesses and present evidence, and that the Court would issue

12  subpoenas at your request to compel witnesses to appear and

13  testify in your defense, even if they didn't want to come?

14          Do you understand that?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Do you understand that at a trial you

17  would not be required to testify against yourself?

18          THE DEFENDANT:  Yes.

19          THE COURT:  And if you chose not to testify, that

20  could not be used against you.

21          Do you understand that if you were convicted at a

22  trial, you would have a right to appeal that verdict to a

23  higher court?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Do you understand that if you enter a

1   guilty plea, you give up all of these rights, including your

2   right to a trial, that you will not be able to withdraw this

3   plea, and that the only remaining step in this case will be the

4   sentencing?

5           THE DEFENDANT:  Yes.

6           THE COURT:  And do you understand that the decision as

7   to the appropriate sentence in your case will be entirely up to

8   the sentencing judge and that they will be limited only by what

9   the law requires?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Do you understand that even if you're

12  surprised or disappointed by your sentence, you will still be

13  bound by your guilty plea?

14          THE DEFENDANT:  Yes.

15          THE COURT:  And, finally, if you do plead guilty, you

16  are also giving up the right not to incriminate yourself, and I

17  will ask you questions about what you did in order to satisfy

18  myself that you are actually guilty.  By pleading guilty you

19  will be admitting your factual as well as legal guilt.

20          Do you understand that?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Knowing all of this, do you still wish to

23  plead guilty to Count Two of the indictment?

24          THE DEFENDANT:  Yes.

25          THE COURT:  All right.  Have any force or threats been

1  used, either direct or indirect, to influence how you plead

2  today?

3           THE DEFENDANT:  I'm sorry?  I didn't hear that.

4           THE COURT:  Have any force or threats been used,

5  either direct or indirect, to influence how you plead today?

6           THE DEFENDANT:  No.

7           THE COURT:  I have before me a letter dated January

8  26, 2023, from the U.S. attorney to your attorney containing a

9  plea agreement.

10           Have you read this letter?

11           THE DEFENDANT:  Yes.

12           THE COURT:  Did you sign it on the last page?

13           THE DEFENDANT:  Yes.

14           THE COURT:  And before you signed it, did you discuss

15  it with your attorney?

16           THE DEFENDANT:  Yes.

17           THE COURT:  And did she explain to you all of its

18  terms and conditions?

19           THE DEFENDANT:  Yes.

20           THE COURT:  Apart from what is contained in this

21  letter, have any promises been made to you in order to get you

22  to plead guilty?

23           THE DEFENDANT:  No.

24           THE COURT:  In reviewing the plea agreement, I note

25  that it contains an analysis of how part of our law of

1   sentencing known as the sentencing guidelines may impact on any

2   prison term in your case.  Based on that analysis, the

3   agreement states that the guidelines sentencing range can be

4   expected to be from 63 to 78 months' imprisonment.

5           Do you understand that?

6           THE DEFENDANT:  Yes.

7           THE COURT:  Do you understand the sentencing judge is

8   not bound by the calculation in the letter and that they will

9   be free to do their own calculation, which may result in a

10  guideline range that is different from the one in the letter?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Do you understand that no matter what

13  sentencing range the sentencing judge believes is called for by

14  the guidelines, that range is just one of many factors that the

15  judge will consider in determining your sentence and that the

16  judge has discretion to give you a prison sentence below or

17  above the range anywhere up to the maximum sentence of

18  imprisonment of 20 years?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Do you also understand that under the

21  terms of this plea agreement, if the judge sentences you to a

22  prison term that is 78 months or less, you are giving up your

23  right to appeal that sentence or to challenge it in any other

24  way such as through a writ of habeas corpus?

25          Do you understand that?

1           THE DEFENDANT:  Yes.

2           THE COURT:  Also, do you understand that the plea

3   agreement says that you cannot appeal any fine of $250,000 or

4   less and that you cannot appeal any lawful sentence of

5   supervised release?

6           THE DEFENDANT:  Yes.

7           THE COURT:  Do you also understand that in this letter

8   you are giving up your right to complain if the government

9   withheld evidence from your attorney that would have been

10  helpful to you?

11          Do you understand that?

12          THE DEFENDANT:  Yes.

13          THE COURT:  All right.  Is your plea voluntary, that

14  is, made of your own free will?

15          THE DEFENDANT:  Yes.

16          THE COURT:  And have any threats been made to

17  influence how you plead today?

18          THE DEFENDANT:  No.

19          THE COURT:  Did you in fact commit the offense that is

20  charged in Count Two of the indictment?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Before I ask you to tell me what you did,

23  I will ask the government to summarize the elements of the

24  offense and, if they wish, to tell me any evidence that they

25  would have offered at trial.

1              THE DEFENDANT:  Thank you, your Honor.

2              In order to establish a violation of Count Two of the

3     indictment, which charges a violation of Title 18, U.S. Code,

4     Section 1343, at trial the government would be required to

5     prove the following elements beyond a reasonable doubt:

6              First, that there was a scheme or artifice to defraud

7     or obtain money or property by materially false and fraudulent

8     pretenses, representations, or promises;

9              Second, that the defendant knowingly and willfully

10    participated in the scheme or artifice to defraud with

11    knowledge of its fraudulent nature and with specific intent to

12    defraud; and,

13             Third, that in the execution of that scheme, the

14    defendant used or caused the use of interstate wires.

15             The government would also be required to prove venue

16    in this district by a preponderance of the evidence.

17             I believe your Honor asked for a proffer of the

18    evidence at this time.

19             THE COURT:  Yes.

20             MR. HORTON:  I am happy to do that.

21             Had this matter gone to trial, the government would

22    have relied on the following evidence, not exclusively, but

23    including witness testimony and records from the victim company

24    regarding the defendant's role as the company's controller; her

25    access to and unauthorized use of the victim's bank account to

1    embezzle $17.1 million; financial records showing that the

2    $17.1 million in charges on the defendant's charge card account

3    was paid off by defendant using the victim company's bank

4    account; evidence from business records and the defendant's

5    e-mail and iCloud accounts showing the charge card charges the

6    defendants incurred on the charge card account and paid off

7    using the company's money; text messages showing the defendants

8    discussing the charge cards account and what to do after the

9    scheme unraveled; IP information showing the Sabitri Laforest

10    paying off the charge card bill from her office in Manhattan;

11    and, finally, testimony and records from the charge card

12    provider showing that the charge card provider processes

13    payments to its charge cards outside of New York State.

14          The government would also prove at trial that venue is

15    appropriate in the Southern District of New York because the

16    victim company was based in Manhattan and the defendant paid

17    the charge card bill from her office in Manhattan.

18          THE COURT:  All right.  Ms. Laforest, please tell me

19    in your own words what you did that makes you guilty of the

20    charge against you.

21          THE DEFENDANT:  Okay.  On or before the year 2013 to

22    2020, I used the company's money, Atlas-Acon's bank account to

23    pay my personal credit cards through telephone calling in the

24    payments or internet.  I knew that it was illegal and I

25    continued doing it, and it was done in the company located in

1   Manhattan.

2          THE COURT:  All right.  And I think that I saw that

3   maybe you were reading from a statement and had a little bit of

4   guidance from your counsel.  I am sure that you and your

5   counsel wanted to make sure that the statements were exact and

6   correct, but I want to ask you, you really did those things you

7   just told me about?

8          THE DEFENDANT:  Yes.

9          THE COURT:  And does the government represent that it

10  has sufficient evidence to establish defendant's guilt beyond a

11  reasonable doubt?

12         MR. HORTON:  Yes, your Honor.

13         THE COURT:  And, Ms. Newman, do you know of any reason

14  why your client should not be permitted to plead guilty?

15         MS. NEWMAN:  No, I do not.

16         THE COURT:  And does counsel have any doubt as to the

17  defendant's competence to plead at this time?

18         MS. NEWMAN:  No, I do not.

19         THE COURT:  All right.  I think I heard Ms. Laforest

20  say that the defendant -- I mean the victim company was in

21  Manhattan, and that would then satisfy venue in the Southern

22  District of New York.

23         Is that right?

24         MS. NEWMAN:  That's correct.

25         THE COURT:  Again, I think I heard this, but I wanted

1    to confirm, Ms. Laforest, that you knew that what you were

2    doing was against the law?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Are there further questions that either

5    side wants me to ask?

6              MR. HORTON:  No, your Honor.

7              MS. NEWMAN:  No, your Honor.

8              THE COURT:  Is there any reason why I should not

9    recommend that the district judge accept this plea?

10             MR. HORTON:  No, your Honor.

11             MS. NEWMAN:  No, your Honor.

12             THE COURT:  Normally, this is the point where I

13   recognize for the district judge that there is family in

14   support.  I do note that I understand it is Mr. Laforest,

15   Ms. Laforest's husband, who will be entering his own plea after

16   this proceeding.

17             On the basis of the defendant's responses to my

18   questions and my observation of her demeanor, I find that she

19   is fully competent to enter an informed plea at this time.  I

20   also conclude that she understands the nature of the charge and

21   the consequences of her plea.  And, finally, I am satisfied

22   that her plea is voluntary and that there is a factual basis

23   for it.

24             Accordingly, I recommend that the proffered plea to

25   Count Two of the indictment be accepted.

```
 1              I assume the government will order a copy of the

 2     transcript and will submit it to Judge McMahon together with

 3     any additional paperwork so is that she can act on my

 4     recommendation.

 5              A presentence investigation report is ordered.

 6              Has Judge McMahon set a sentencing date, or should we

 7     be set a control date right now?

 8              MR. HORTON:  I don't believe there is, so I think it

 9     would be appropriate to set a control date, your Honor.

10              THE COURT:  Okay.  A control date for 90 days out?

11              MR. HORTON:  Yes, please.

12              MS. NEWMAN:  Yes, please.

13              THE COURT:  All right.

14              So the control date will be May 8.

15              MS. NEWMAN:  If I may, your Honor, also request a copy

16     of the plea transcript?

17              THE COURT:  Yes.

18              MS. NEWMAN:  Thank you.

19              I am CJA, I should have said.  I'm sorry.

20              THE COURT:  Okay.  The prosecution case summary for

21     purposes of the presentence report is to be delivered to the

22     probation department no later than 14 days from today.

23              Defense counsel, you should make yourself available to

24     be interviewed by the probation department with your client no

25     later than 14 days from today.
```

1                Is there anything further on this matter from either

2      side?

3                MR. HORTON:  No, your Honor.  Thank you.

4                MS. NEWMAN:  No, your Honor.  Thank you.

5                THE COURT:  All right.  Thank you very much.

6                We will take a brief adjournment.

7                MS. NEWMAN:  Thank you.

8                THE COURT:  Thank you.

9                (Adjourned)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4              v.                         21 Cr. 272 (VF)(CM)

 5   SANJAY LAFOREST,

 6                  Defendant.
                                          Plea
 7   ------------------------------x

 8                                        New York, N.Y.
                                          February 21, 2023
 9                                        10:40 a.m.

10   Before:

11
                        HON. VALERIE FIGUEREDO,
12

13                                        U.S. Magistrate Judge

14                            APPEARANCES

15   DAMIAN WILLIAMS
          United States Attorney for the
16        Southern District of New York
     BY:  JUSTIN HORTON
17        Assistant United States Attorney

18   GOLDBERG & KAPLAN, LLP
          Attorneys for Defendant Sanjay Laforest
19   BY:  BRIAN I. KAPLAN

20

21

22

23

24

25
```

1              (Case called)

2              THE DEPUTY CLERK:  Attorneys, will you please state

3    your appearance for the record starting with the government.

4              MR. HORTON:  Good morning, your Honor.  Justin Horton

5    for the government.  Brian Kaplan for Mr. Sanjay Laforest.

6    Good morning, your Honor.

7              THE COURT:  Good morning.

8              Good morning, Mr. Laforest.

9              THE DEFENDANT:  Good morning.

10             THE COURT:  Mr. Laforest, just to confirm, you're able

11   to speak and understand English?

12             THE DEFENDANT:  Yes.

13             THE COURT:  And I understand we're here for a change

14   of plea.

15             Is that correct, Mr. Kaplan?

16             MR. KAPLAN:  It is correct.  There was already a plea

17   agreement that was executed by the parties.

18             THE COURT:  Mr. Laforest, I have before me a consent

19   to proceed before a United States magistrate judge on a felony

20   plea allocution that you have signed.

21             What this form says is that you know you have the

22   right to have your plea taken by a United Stated district judge

23   but you are agreeing to have it taken by a United States

24   magistrate judge, which is what I am.

25             As a magistrate judge, I have the authority to take

1    your plea, with your consent, and you will still be entitled to

2    all the same rights and protections as if you were before a

3    district judge.  Among other things, if you are found guilty,

4    you will be sentenced by a district judge.

5            Did you sign the consent to proceed before a United

6    States magistrate judge voluntarily?

7            THE DEFENDANT:  Yes, your Honor.

8            THE COURT:  Before you signed the form, did your

9    lawyer explain it to you?

10           THE DEFENDANT:  Yes, your Honor.

11           THE COURT:  Do you wish to proceed with your plea

12   before a United States magistrate judge?

13           THE DEFENDANT:  Yes, your Honor.

14           THE COURT:  Your consent is accepted, and I'm signing

15   the form.

16           Mr. Laforest, I've been informed that you wish to

17   change your plea and to enter a plea of guilty as to Count Two

18   of the indictment in this action.

19           Is that correct?

20           THE DEFENDANT:  Yes, your Honor.

21           THE COURT:  Before deciding whether to accept your

22   guilty plea, I am going to ask you certain questions.  It is

23   very important that you answer these questions honestly and

24   completely.

25           The purpose of these proceedings is to make sure that

1   you understand your rights, to decide whether you are pleading

2   guilty of your own free will, and to make sure that you are

3   pleading guilty because you are guilty and not for some other

4   reason.

5          Do you understand what I'm saying?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  If you don't understand any of the

8   questions or if you want at any time to consult with your

9   lawyer, please say so because it is important that you

10  understand every question before you answer.

11         Can you please raise your right hand.

12         (Defendant sworn)

13         THE COURT:  Do you understand that you are now under

14  oath and that if you answer any of my questions falsely, you

15  may be prosecuted for perjury based on any false answers?

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  Mr. Laforest, can you give me your full

18  name, please.

19         THE DEFENDANT:  Sanjay Laforest.

20         THE COURT:  How old are you?

21         THE DEFENDANT:  I am 40 years old.

22         THE COURT:  Are you a United States citizen?

23         THE DEFENDANT:  Yes, I am.

24         THE COURT:  How far did you go in school?

25         THE DEFENDANT:  I went to third year in college.

1          THE COURT:  Are you currently or have you recently

2    been under the care of a doctor, a psychiatrist, or a

3    psychologist for any reason?

4          THE DEFENDANT:  No, I have not.

5          THE COURT:  I'm just going to confirm.

6          You said you had proceeded through your third year in

7    college.

8          So is it correct to say that you can read and write in

9    English?

10         THE DEFENDANT:  Yes.  It is correct.

11         THE COURT:  Do you have any condition that affects

12   your ability to see or hear?

13         THE DEFENDANT:  No, I don't.

14         THE COURT:  Any condition that affects your ability to

15   understand or make judgments or decision on your own behalf?

16         THE DEFENDANT:  No, I do not.

17         THE COURT:  In the last 24 hours, have you taken any

18   drugs, medicine, or pills that affect your mental processes or

19   consumed any alcohol?

20         THE DEFENDANT:  No, I have not.

21         THE COURT:  Is your mind clear today?

22         THE DEFENDANT:  Yes.  My mind is clear.

23         THE COURT:  Do you understand what is happening in

24   this proceeding?

25         THE DEFENDANT:  Yes, I do.

1          THE COURT:  Does either counsel have any objections to

2     Mr. Laforest's competence to plead at this time?

3          MR. HORTON:  No, your Honor.

4          MR. KAPLAN:  Nor do I, your Honor.

5          THE COURT:  Mr. Laforest, have you received a copy of

6     the indictment that contains the charges against you?

7          THE DEFENDANT:  Yes, I have, your Honor.

8          THE COURT:  Have you read it?

9          THE DEFENDANT:  Yes, I have, your Honor.

10          THE COURT:  Do you want me to read it to you?

11          THE DEFENDANT:  No, I do not, your Honor.

12          THE COURT:  Do you understand what it says you did?

13          THE DEFENDANT:  Yes, I do, your Honor.

14          THE COURT:  Have you had time to talk to your attorney

15     about these charges and about how you wish to plead?

16          THE DEFENDANT:  Yes, I have, your Honor.

17          THE COURT:  Has your attorney told you the

18     consequences of pleading guilty?

19          THE DEFENDANT:  Yes, he has, your Honor.

20          THE COURT:  Are you satisfied with your attorney's

21     representation of you?

22          THE DEFENDANT:  Yes, I am, your Honor.

23          THE COURT:  I am now going to explain certain

24     constitutional rights that you have.  These are rights that you

25     will be giving up if you enter a guilty plea.  Please listen

1  carefully to what I am about to say.  If you do not understand

2  something, stop me.  And your attorney or I will explain the

3  issue more fully.

4          Under the Constitution and the laws of the

5  United States, you have right to plead not guilty to the

6  charges contained in the indictment.

7          Do you understand that?

8          THE DEFENDANT:  Yes, I do, your Honor.

9          THE COURT:  If you pled not guilty, you would be

10 entitled under the Constitution to a speedy and public trial by

11 a jury of those charges.  At that trial, you would be presumed

12 innocent, and the government would be required to prove you

13 guilty beyond a reasonable doubt before you could be found

14 guilty.  You could not be convicted unless a jury of 12 people

15 agreed unanimously that you were guilty beyond a reasonable

16 doubt.

17         Do you understand that?

18         THE DEFENDANT:  Yes, I do, your Honor.

19         THE COURT:  If you decided to go to trial, at that

20 trial and at every stage of your case, you would have the right

21 to be represented by an attorney.  And if you could not afford

22 one, an attorney would be appointed to represent you at the

23 government's expense.

24         Even if you retain private defense counsel, if you run

25 out of money, an attorney would be appointed to continue to

1    represent you.  You would be entitled to an attorney all the

2    way through trial and not just for a guilty plea.  So your

3    decision to plead guilty should not depend on whether you can

4    afford to hire an attorney.

5           Do you understand that?

6           THE DEFENDANT:  Yes, I do, your Honor.

7           THE COURT:  During a trial, the witnesses for the

8    prosecution would have to come to court and testify in your

9    presence where you could see and hear them and your lawyer

10   could cross-examine those witnesses.  And if you wanted, your

11   lawyer could offer evidence on your behalf.  You would be able

12   to use the Court's power to compel witnesses to come to court

13   to testify, even if they did not want to come.

14          Do you understand that?

15          THE DEFENDANT:  Yes, I do, your Honor.

16          THE COURT:  At a trial, you would have the right to

17   testify in your own defense if you wanted to.  But you would

18   also have the right not to testify.  If you chose not to

19   testify, that could not be used against you in any way.  No

20   inference or suggestion of guilt would be permitted from the

21   fact that you did not testify.

22          Do you understand that?

23          THE DEFENDANT:  Yes, I do, your Honor.

24          THE COURT:  If you were convicted at trial, you would

25   have the right to appeal that verdict to a higher court.

1              Do you understand that?

2              THE DEFENDANT:  Yes, I do, your Honor.

3              THE COURT:  As I said before, you have the right to

4    plead not guilty.  Even right now, even as you sit here today

5    for purposes of entering a guilty plea, you have the right to

6    change your mind, persist in your not guilty plea, and go to a

7    trial.

8              But if you do plead guilty and if the court accepts

9    your plea, you will give up the right to a trial and all other

10   rights that go with it that I just described.  If you plead

11   guilty, there will be no trial.  All that will remain to be

12   done will be to impose a sentence.

13             You and the government will have a chance to make

14   arguments about what sentence you should get.  But there will

15   not be any further trial to determine whether you are guilty or

16   not guilty of the charges to which you pled guilty.

17             Do you understand that?

18             THE DEFENDANT:  Yes, I do, your Honor.

19             THE COURT:  Do you understand that the decision that

20   is appropriate in your case will be entirely up to the

21   sentencing judge and that the judge will be limited only by

22   what the law requires.  This means that even if you were

23   surprised or disappointed by your sentence, you still will be

24   bound by your guilty plea.

25             Do you understand that?

1          THE DEFENDANT:  Yes, I do, your Honor.

2          THE COURT:  Finally, if you do plead guilty, you are

3    giving up your right not to incriminate yourself, and I will

4    ask you questions about what you did to satisfy myself that you

5    are actually guilty.  By pleading guilty, you will be admitting

6    your factual as well as your legal guilt.

7          Do you understand that?

8          THE DEFENDANT:  Yes, I do, your Honor.

9          THE COURT:  Count Two of the indictment charges that

10   you committed wire fraud in violation of Title 18 Section 1343

11   of the United States Code.

12         I'm going to ask Mr. Horton to state the elements of

13   the charge.

14         Mr. Laforest, the elements are the things that the

15   government would have to prove beyond a reasonable doubt if you

16   went to trial.

17         MR. HORTON:  Thank you, your Honor.

18         To establish a violation of Title 18 U.S. Code Section

19   1343 at trial, the government would be required to prove the

20   following elements beyond a reasonable doubt:

21         First, that there was a scheme or artifice to defraud

22   or obtain money or property by materially false and fraudulent

23   pretenses, representations, or promises;

24         Second, that the defendant knowingly and willfully

25   participated in the scheme or artifice to defraud with

1   knowledge of its fraudulent nature and with specific intent to

2   defraud or, in the alternative, that the defendant deliberately

3   closed his eyes to what would have otherwise been obvious to

4   him.  That is, he acted with a conscious purpose to avoid

5   learning a particular fact or facts; and

6          Third, that in the execution of that scheme, the

7   defendant used or caused the use of interstate wires.  The

8   government would also be required to prove venue in the

9   Southern District of New York by a preponderance of the

10  evidence.

11         THE COURT:  Mr. Laforest, I'm now going to tell you

12  the maximum possible penalty for that crime.  The maximum means

13  the most that could possibly be imposed.  It does not mean that

14  is what you necessarily will receive.  But by pleading guilty,

15  you are exposing yourself to the possibility of any combination

16  of punishments up to the maximum that I am about to describe.

17         Do you understand that?

18         THE DEFENDANT:  Yes, your Honor.

19         THE COURT:  The maximum term of imprisonment for the

20  crime charged in Count Two of the indictment is 20 years which

21  could be followed by up to three years of supervised release.

22         If your sentence includes supervised release, you will

23  be subject to supervision by the probation department after

24  your release from prison.  If you violate any condition of that

25  release, the court can revoke the terms of supervised release

1  previously imposed and return you to prison without giving you

2  any credit for time previously served on post-release

3  supervision.

4          In addition to these restrictions on your liberty, the

5  maximum possible punishment for the crime charged in Count Two

6  also includes financial penalties.  The maximum allowable fine

7  is $250,000 or twice the profits of the criminal activity or

8  twice what someone, other than yourself, lost because of the

9  criminal activity, whichever is greater.  You can also be

10  required to pay restitution to any victims of the crime in an

11  amount that the court decides is required to compensate them

12  for any injuries.

13          In addition, by pleading guilty, you will admit to the

14  forfeiture allegations in the indictment and agree to forfeit

15  any property within the scope of 18 U.S. Code Section 981 and

16  28, U.S. Code Section 2461.

17          I'm also required by law to tell you that there is an

18  additional special assessment or fine of $100 that is required

19  to be imposed on each count of conviction.

20          Mr. Laforest, you told me a few minutes ago that you

21  are a United States citizen.  The reason I asked that question

22  was that if you were not a citizen, your guilty plea would

23  likely have adverse consequences for your ability to remain in

24  or return to the United States, including removal, deportation,

25  denial of citizenship, and denial of admission to the

 1   United States in the future.

 2           Your removal or deportation could be mandatory, and if

 3   that did happen, you would still be bound by your guilty plea.

 4   That is, you would not be able to withdraw it, regardless of

 5   any advice you received from your attorney or others regarding

 6   the immigration consequences of your plea.

 7           Do you understand that?

 8           THE DEFENDANT:  Yes, your Honor.

 9           THE COURT:  Has anyone threatened you or coerced you

10   in any way in an effort to get you to plead guilty?

11           THE DEFENDANT:  No, they have not, your Honor.

12           THE COURT:  I understand that there is a written plea

13   agreement between you and the government.  It's contained in a

14   letter dated February 1, 2023, addressed to your attorney,

15   Mr. Kaplan, which appears to have your signature on the last

16   page.

17           Did you sign this plea agreement?

18           THE DEFENDANT:  Yes, your Honor.

19           THE COURT:  Did you read it before you signed it?

20           THE DEFENDANT:  Yes, your Honor.

21           THE COURT:  Did you discuss it with your attorney?

22           THE DEFENDANT:  Yes, your Honor.

23           THE COURT:  Do you understand the terms of the

24   agreement?

25           THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  Has anyone promised you or offered you

2     anything in order to get you to plead guilty, other than what

3     is in this plea agreement?

4          THE DEFENDANT:  No, your Honor.

5          THE COURT:  It appears that you and the government

6     have reached agreement regarding the appropriate calculation of

7     your sentence under a part of our law known as the sentencing

8     guidelines.

9          Is that correct?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  And that agreement is that the appropriate

12    guideline sentencing range is from 21 to 27 months and the

13    appropriate monetary fine is from $10,000 to $95,000.  Under

14    this agreement, neither you nor the government is allowed to

15    argue to the sentencing judge for a calculation that is

16    different than the one in this agreement.

17          Do you understand that in this agreement, you have

18    limited your right to appeal from any sentence that may be

19    imposed?

20          Specifically, do you understand that as long as

21    Judge McMahon sentences you to a prison term of no longer than

22    27 months, any lawful sentence of supervised release, and a

23    fine no greater than $95,000, you are giving up your right to

24    challenge your sentence, whether by direct appeal, writ of

25    habeas corpus, or otherwise?

1              Do you understand that?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  Do you understand that under the terms of

4     the plea agreement, you are waiving any and all right to

5     withdraw your plea or to attack your conviction or sentence,

6     either on direct appeal or collaterally, on the ground that the

7     government has failed to produce any discovery material, other

8     than information establishing your factual innocence, including

9     Jencks Act material, material pursuant to *Brady v. Maryland*,

10    and impeachment material pursuant to *Giglio v. The United*

11    *States* that has not already been produced as of the date of the

12    signing of your plea agreement?  That is, you will not be able

13    to complain about that or withdraw your guilty plea on that

14    basis.

15             Do you understand that?

16             THE DEFENDANT:  Yes, your Honor.

17             THE COURT:  Mr. Laforest, do you understand that the

18    term of this plea agreement, including any calculation related

19    to sentence, are not binding on the sentencing judge?

20             The sentencing judge may reject those calculations and

21    could impose a more severe sentence than you expect without

22    permitting you to withdraw your plea of guilty.  The sentencing

23    judge is required to make her own independent calculation of

24    the appropriate sentencing range under the sentencing

25    guidelines and will also have the discretion to give you a

1    sentence below or above that range up to the maximum sentence

2    that I told you about earlier.

3            In addition to the guidelines and possible departures

4    from those guidelines, the sentencing judge will also consider

5    the factors set forth in 18 U.S. Code Section 3553(a).   In

6    other words, the sentencing judge will pronounce whatever

7    sentence she believes is the appropriate sentence for you, even

8    if that sentence is different from the one set forth in your

9    plea agreement.

10           Do you understand that?

11           THE DEFENDANT:  Yes, your Honor.

12           THE COURT:  The Court will also consider a presentence

13   report prepared by the probation department in advance of your

14   sentencing.  Before you are sentenced, you and the government

15   will have an opportunity to challenge the facts reported by the

16   probation officer.

17           Do you understand that there is no parole in the

18   federal system?  That means that if you are sentenced to

19   prison, you will not be released on parole.

20           Do you understand that?

21           THE DEFENDANT:  Yes, your Honor.

22           THE COURT:  Before I go on, I'm going to ask either

23   counsel if there is any other provision of the plea agreement

24   that you would like me to go over.

25           MR. HORTON:  No, your Honor.  Thank you.

1                  MR. KAPLAN:  No.  Thank you, your Honor.

2                  THE COURT:  Mr. Laforest, aside from what is in the

3      plea agreement itself, have any promises been made to you to

4      influence you to plead guilty?

5                  THE DEFENDANT:  No, your Honor.

6                  THE COURT:  Have any promises been made to you

7      concerning the actual sentence you will receive?

8                  THE DEFENDANT:  No, your Honor.

9                  THE COURT:  Now that you've been advised of the charge

10     against you, the possible penalties you face, and the rights

11     you are giving up, is it still your intention to plead guilty

12     to Count Two of the indictment?

13                 THE DEFENDANT:  Yes, your Honor.

14                 THE COURT:  Is your plea voluntary and made of your

15     own free will?

16                 THE DEFENDANT:  Yes, your Honor.

17                 THE COURT:  Mr. Laforest, with respect to Count Two,

18     how do you plead?  Guilty or not guilty?

19                 THE DEFENDANT:  Guilty, your Honor.

20                 THE COURT:  Can you tell me in your own words what you

21     did that makes you guilty of that crime.

22                 THE DEFENDANT:  From 2023 to 2020, I participated in

23     an embezzlement scheme that I willfully and consciously

24     disregarded numerous red flags which indicated my mother was

25     stealing funds from the electric corporation she worked for.

1          In furtherance of the embezzlement scheme, I sent

2     emails and made phone calls directing others involved in the

3     scheme to use money that was stolen from the company to make

4     purchases for the restaurant equipment and other charges with

5     respect to my restaurants which I owned here in Manhattan.

6          THE COURT:  Did your attorney help you prepare the

7     testimony you just gave?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  And do you adopt those words as your own?

10         THE DEFENDANT:  Yes, your Honor.

11         THE COURT:  Is everything you just told me true?

12         THE DEFENDANT:  Yes, your Honor.

13         THE COURT:  Did you know at the time that you did

14    these acts that what you were doing was wrong?

15         THE DEFENDANT:  Yes, your Honor.

16         THE COURT:  Mr. Horton, do you believe there is a

17    sufficient factual predicate for a guilty plea?

18         MR. HORTON:  Yes, your Honor, with one point of

19    clarification.  I apologize if your Honor went over this

20    already.  If the Court could ask the defendant to admit the

21    forfeiture allegations in the indictment.

22         THE COURT:  Mr. Laforest, under the terms of your plea

23    agreement, you are admitting the forfeiture allegations with

24    respect to Count Two of the indictment.  And that means that

25    you agree to forfeit to the United States, pursuant to Title 18

1   U.S. Code Section 981(a)(1)(C) and Title 28, U.S. Code Section

2   2461(c), a sum of money to be determined by the court

3   representing proceeds traceable to the commission of said

4   offense and all right, title, and interest of yourself in the

5   specific property listed in the indictment.

6          Do you understand that?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  Mr. Horton, is there anything else you

9   want him to acknowledge on the record?

10          MR. HORTON:  No.  Thank you, your Honor.

11          THE COURT:  Does the government represent that it has

12   sufficient evidence to establish guilt beyond a reasonable

13   doubt at trial?

14          MR. HORTON:  Yes, your Honor.  I'm happy to proffer

15   that evidence now.

16          THE COURT:  Yes, please.

17          MR. HORTON:  Had this matter gone to trial, the

18   government would have introduced or sought to introduce the

19   following evidence.  This is not an exhaustive list:

20          Witness testimony and records from the victim company

21   regarding Sabitri Laforest's role as the company's controller;

22   her access to and her unauthorized use of the victim's bank

23   account to embezzle $17.1 million; financial records showing

24   that $17.1 million in charges over seven years on a charge card

25   account opened by Tatiana Laforest was paid off using the

victim company's bank account; evidence that Tatiana and Sanjay

Laforest are the adult children of Sabitri and Garry Laforest

who are also cardholders on Tatiana's charge card account;

evidence from business records and the defendant's email and

iCloud accounts showing the charges the defendants incurred on

the charge card account and paid off using the victim company's

money, including millions of dollars charged to Sanjay's

restaurants which Tatiana helped process; as well as using the

charge card in question to make payments for the restaurant's

rent and food expenses; evidence from the defendant's email

accounts and credit card companies that Sanjay and Tatiana

Laforest lied to multiple credit card processing companies

about the nature of the charges incurred using the family's

charge card account at the restaurants by creating false

invoices so that the credit card companies would process the

transactions and send the cash to Sanjay Laforest's business

accounts; evidence that Sanjay Laforest also paid his personal

rent at a luxury apartment near Hudson Yards; travel expenses

and other personal expenses using Tatiana's charge card;

evidence that Sanjay Laforest deleted incriminating emails

between himself, Tatiana Laforest, and the credit card

processing companies from Sanjay Laforest's Gmail account; IP

information showing Sabitri Laforest paying off the charge card

bill from her office in Manhattan; and testimony and records

from the charge card company showing that the charge card

1    company processes its payments to its charge cards outside of

2    New York state.

3            The government would also introduce evidence showing

4    that venue is appropriate in the Southern District of New York

5    because the victim company was based in Manhattan, Sanjay's

6    restaurants were located in Manhattan, and Sabitri Laforest

7    paid the charge card bill from her office in Manhattan.

8            THE COURT:  Thank you.

9            Mr. Laforest, on the basis of your responses to my

10   questions and my observations of your demeanor, I find that you

11   are competent to enter a guilty plea.  I am satisfied that you

12   understand your rights, including your right to go to trial;

13   that you are aware of the consequences of your plea, including

14   the sentence that may be imposed; and that you are voluntarily

15   pleading guilty; and that you have admitted that you are guilty

16   as charged in Count Two of the indictment.  For these reasons,

17   I will recommend that Judge McMahon accept your plea.

18           Mr. Horton, I assume the government will order a copy

19   of the transcript and will submit it to Judge McMahon, together

20   with any paperwork, so that she may act on my recommendation.

21           MR. HORTON:  Yes, your Honor.

22           THE COURT:  Has Judge McMahon set a sentencing date?

23           MR. HORTON:  She has not yet set a sentencing date,

24   your Honor.

25           THE COURT:  And Mr. Laforest is out on bail?

1          MR. HORTON:  Yes.  That's right.

2          THE COURT:  I'm going to set a control date for six

3    months, which is Monday, August 21, 2023, for a sentencing

4    date.  I'll direct that the presentence report be prepared.

5          Mr. Horton, can you deliver the case summary for

6    purposes of the presentence report to the probation department

7    within 14 days?

8          MR. HORTON:  Yes, your Honor.

9          THE COURT:  Mr. Kaplan, will you be available to be

10   interviewed with Mr. Laforest by the probation department

11   within 14 days?

12         MR. KAPLAN:  Yes.  And I wish to be present.

13         THE COURT:  Thank you.

14         Are there any objections to continuing the present

15   bail?

16         MR. HORTON:  No, your Honor.

17         THE COURT:  Mr. Laforest, all of the conditions on

18   which you were released up until now continue to apply, and a

19   violation of those conditions can have serious consequences,

20   including revocation of bail and prosecution for bail jumping.

21         Do you understand that?

22         THE DEFENDANT:  Yes, your Honor.

23         THE COURT:  Is there anything further on this matter

24   from either side?

25         MR. HORTON:  No.  Thank you, your Honor.

1          MR. KAPLAN:  Nothing else from me.

2          THE COURT:  Thank you very much.

3          (Adjourned)

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4             v.                         21 Cr. 272 (VF)(CM)

 5   TATIANA LAFOREST,

 6               Defendant.
                                         Plea
 7   ------------------------------x

 8                                       New York, N.Y.
                                         February 21, 2023
 9                                       11:35 a.m.

10   Before:

11
                      HON. VALERIE FIGUEREDO,
12

13                                       U.S. Magistrate Judge

14                           APPEARANCES

15   DAMIAN WILLIAMS
          United States Attorney for the
16        Southern District of New York
     BY:  JUSTIN HORTON
17        Assistant United States Attorney

18   GOLDBERG & KAPLAN, LLP
          Attorneys for Defendant Tatiana Laforest
19   BY:  BARRY R. GOLDBERG

20

21

22

23

24

25
```

2

1           (Case called)

2           THE DEPUTY CLERK:  Government, can you please make

3     your appearance for the record.

4           MR. HORTON:  Good morning.  Justin Horton for the

5     government.

6           THE COURT:  Good morning.

7           MR. GOLDBERG:  For Ms. Laforest, it's Barry Goldberg.

8           THE COURT:  Good morning, Mr. Goldberg.

9           Good morning, Ms. Laforest.

10          THE DEFENDANT:  Good morning, your Honor.

11          THE COURT:  Ms. Laforest, I just want to confirm.

12          Are you able to speak and understand English?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Mr. Goldberg, I understand we are here for

15    a change of plea.

16          Is that correct?

17          MR. GOLDBERG:  Yes, your Honor.

18          THE COURT:  Ms. Laforest, I have before me a consent

19    to proceed before a United States magistrate judge on a felony

20    plea allocution.  It's a form that you have signed.

21          What this form says is that you have the right to have

22    your plea taken by a United States district judge but you are

23    agreeing to have the plea taken by a United States magistrate

24    judge, which is what I am.

25          As a magistrate judge, I have the authority to take

 1   your plea, with your consent, and you will be entitled to all

 2   of the same rights and protections as if you were before a

 3   district judge.  Among other things, if you are found guilty,

 4   you will be sentenced by a district judge.

 5           Did you sign the consent to proceed before a United

 6   States magistrate judge form voluntarily?

 7           THE DEFENDANT:  Yes, I did.

 8           THE COURT:  Before you signed the form, did your

 9   attorney explain it to you?

10           THE DEFENDANT:  Yes, he did.

11           THE COURT:  Do you wish to proceed with your plea

12   before a United States magistrate judge?

13           THE DEFENDANT:  Yes, I do.

14           THE COURT:  Your consent is accepted, and I'm signing

15   the form.

16           Ms. Laforest, I've been informed that you wish to

17   change your plea and to enter a plea of guilty to Count Two of

18   the indictment.

19           Is that correct?

20           THE DEFENDANT:  Yes.

21           THE COURT:  Before deciding whether to accept your

22   guilty plea, I'm going to ask you certain questions.  It is

23   very important that you answer these questions honestly and

24   completely.

25           The purpose of this proceeding is to make sure that

4

1    you understand your rights, to decide whether you are pleading

2    guilty of your own free will, and to make sure that you are

3    pleading guilty because you are guilty and not for some other

4    reason.

5              Do you understand what I'm saying?

6              THE DEFENDANT:  Yes.

7              THE COURT:  If you don't understand any of the

8    questions or if you want any time to consult with your

9    attorney, please say so because it is important that you

10   understand every question before you answer.

11             Can you please raise your right hand.

12             (Defendant sworn)

13             THE COURT:  Do you understand that you are now under

14   oath and that if you answer any of my questions falsely, you

15   may be prosecuted for perjury based on any false answers?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Ms. Laforest, can you please give me your

18   full name.

19             THE DEFENDANT:  Tatiana Laforest.

20             THE COURT:  And how old are you?

21             THE DEFENDANT:  Thirty-eight.

22             THE COURT:  How far did you go in school?

23             THE DEFENDANT:  College, bachelor's.

24             THE COURT:  Can you read and write in English?

25             THE DEFENDANT:  Yes.

1         THE COURT:  Are you currently or have you recently

2   been under the care of a doctor, psychiatrist, or psychologist

3   for any reason?

4         THE DEFENDANT:  No.

5         THE COURT:  Do you have any condition that affects

6   your ability to see or hear?

7         THE DEFENDANT:  No.

8         THE COURT:  Any condition that affects your ability to

9   think or to understand or to make judgments or decisions on

10  your own behalf?

11        THE DEFENDANT:  No.

12        THE COURT:  In the last 24 hours, have you taken any

13  drugs, medicine, or pills that affect your mental processes or

14  consumed any alcohol?

15        THE DEFENDANT:  No.

16        THE COURT:  Is your mind clear today?

17        THE DEFENDANT:  Yes.

18        THE COURT:  Do you understand what is happening in

19  this proceeding?

20        THE DEFENDANT:  Yes.

21        THE COURT:  Does either attorney have any objections

22  to Ms. Laforest's competence to plead at this time?

23        MR. HORTON:  No.  Thank you, your Honor.

24        MR. GOLDBERG:  No, your Honor.

25        THE COURT:  Ms. Laforest, have you received a copy of

1      the indictment that contains the charges against you?

2                THE DEFENDANT:  Yes, I have.

3                THE COURT:  Have you read it?

4                THE DEFENDANT:  Yes, I have.

5                THE COURT:  Do you want me to read it to you?

6                THE DEFENDANT:  No.  Thank you.

7                THE COURT:  Do you understand what it says you did?

8                THE DEFENDANT:  Yes.

9                THE COURT:  Have you had time to talk to your attorney

10     about the charges and about how you wish to plead today?

11               THE DEFENDANT:  Yes.

12               THE COURT:  Has your attorney told you the

13     consequences of pleading guilty?

14               THE DEFENDANT:  Yes.

15               THE COURT:  Are you satisfied with your attorney's

16     representation of you?

17               THE DEFENDANT:  Yes.

18               THE COURT:  Ms. Laforest, I am going to explain

19     certain constitutional rights that you have.  These are rights

20     that you will be giving up if you enter a guilty plea.  Please

21     listen carefully to what I am about to say.  And if you do not

22     understand something, stop me.  And your attorney or I will

23     explain the issue more fully.

24               Under the Constitution and the laws of the

25     United States, you have a right to plead not guilty to the

7

1    charges contained in the indictment.

2              Do you understand that?

3              THE DEFENDANT:  Yes.

4              THE COURT:  And if you plead not guilty, you would be

5    entitled under the Constitution to a speedy and public trial by

6    a jury of those charges.  At that trial, you would be presumed

7    innocent, and the government would be required to prove you

8    guilty beyond a reasonable doubt before you could be found

9    guilty, and you could not be convicted until a jury of 12

10   agreed unanimously that you were guilty beyond a reasonable

11   doubt.

12             Do you understand that?

13             THE DEFENDANT:  Yes.

14             THE COURT:  If you decided to go to trial, at that

15   trial and at every stage of your case, you would have the right

16   to be represented by an attorney.  And if you could not afford

17   one, an attorney would be appointed to represent you at the

18   government's expense.

19             Even if you retain private defense counsel, if you ran

20   out of money, an attorney would be appointed to continue to

21   represent you.  You would be entitled to an attorney all the

22   way through trial and not just for the guilty plea.  So your

23   decision to plead guilty should not depend on whether you can

24   afford to hire an attorney.

25             Do you understand that?

1          THE DEFENDANT:  Yes, I do.

2          THE COURT:  During a trial, the witnesses for the

3   prosecution would have to come to court and testify in your

4   presence where you could see and hear them and your lawyer

5   could cross-examine those witnesses and, if you wanted, your

6   lawyer could offer evidence on your behalf.  You would be able

7   to use the court's power to compel witnesses to come to court

8   to testify, even if they did not want to come.

9          Do you understand that?

10          THE DEFENDANT:  Yes, I do.

11          THE COURT:  At a trial, you would have the right to

12   testify in your own defense if you wanted to, but you would

13   also have the right not to testify.  And if you chose not to

14   testify, that could not be used against you in any way.  No

15   inference or suggestion of guilt would be permitted from the

16   fact that you did not testify.

17          Do you understand that?

18          THE DEFENDANT:  Yes, I do.

19          THE COURT:  If you were convicted at trial, you would

20   have the right to appeal that verdict to a higher court.

21          Do you understand that?

22          THE DEFENDANT:  Yes, I do.

23          THE COURT:  As I said before, you have the right to

24   plead not guilty.  Even right now, even as you sit here today

25   for the purpose of entering a guilty plea, you have the right

1    to change your mind, persist in your not guilty plea, and go to

2    trial.  But if you do plead guilty and if the court accepts

3    your plea, you will give up the right to a trial and all of the

4    other rights that go with it that I have just described.

5           If you plead guilty, there will be no trial.  All that

6    will remain to be done will be to impose a sentence.  You and

7    the government will have a chance to make arguments about what

8    sentence you should get, but there will not be any further

9    trial to determine whether you are guilty or not guilty of the

10   charges to which you pled guilty.

11          Do you understand that?

12          THE DEFENDANT:  Yes, I do.

13          THE COURT:  Do you understand that the decision as to

14   the appropriate sentence in your case will be entirely up to

15   the sentencing judge and that the judge will be limited only by

16   what the law requires?  This means that even if you are

17   surprised or disappointed by your sentence, you will still be

18   bound by your guilty plea.

19          Do you understand that?

20          THE DEFENDANT:  Yes, I do.

21          THE COURT:  Finally, if you do plead guilty, you are

22   also giving up the right not to incriminate yourself and I will

23   ask you questions about what you did in order to satisfy myself

24   that you are actually guilty.  By pleading guilty, you will be

25   admitting your factual as well as your legal guilt.

10

1          Do you understand that?

2          THE DEFENDANT:  Yes, I do.

3          THE COURT:  Ms. Laforest, Count Two of the indictment

4     charges that you committed wire fraud in violation of Title 18

5     Section 1343 of the United States Code.  I'm going to ask

6     Mr. Horton to state the elements of the charge.  The elements

7     are the things that the government would have to prove beyond a

8     reasonable doubt if you went to trial.

9          MR. HORTON:  Thank you, your Honor.

10          To establish a violation of Title 18 U.S. Code Section

11     1343 at trial, the government would be required to prove the

12     following elements beyond a reasonable doubt:

13          First, that there was a scheme or artifice to defraud

14     or obtain money or property by materially false and fraudulent

15     pretenses, representations, or promises;

16          Second, that the defendant knowingly and willfully

17     participated in the scheme or artifice to defraud with

18     knowledge of its fraudulent nature and with specific intent to

19     defraud; and

20          Third, that in the execution of that scheme, the

21     defendant used or caused the use of interstate wires.

22          The government would also be required to prove venue

23     by a preponderance of the evidence.

24          THE COURT:  Thank you.

25          Ms. Laforest, I'm going to tell you the maximum

1    possible penalty for that crime.  The maximum means the most

2    that could possibly be imposed.  It does not mean that that is

3    what you will necessarily receive.  But by pleading guilty, you

4    are exposing yourself to the possibility of receiving any

5    combination of punishments up to the maximum that I am about to

6    describe.

7              Do you understand that?

8              THE DEFENDANT:  Yes, I do.

9              THE COURT:  The maximum term of imprisonment for the

10   crime charged in Count Two is 20 years which could be followed

11   by up to three years of supervised release.

12             If your sentence includes supervised release, you will

13   be subject to supervision by the probation department after you

14   are released from prison.  If you violate any condition of that

15   supervised release, the court can revoke the term of supervised

16   release previously imposed and return you to prison without

17   giving you any credit for time previously served on

18   post-release supervision.

19             In addition to these restrictions on your liberty, the

20   maximum possible punishment for the crime charged in Count Two

21   also includes financial penalties.

22             The maximum allowable fine is $250,000 or twice the

23   profits of the criminal activity or twice what someone other

24   than yourself lost because of the criminal activity, whichever

25   is greater.  You can also be required to pay restitution to any

1   victims of the crime in an amount that the court decides is

2   required to compensate them for any injuries.

3            In addition, by pleading guilty, you will admit the

4   forfeiture allegations in the indictment and agree to forfeit

5   any property within the scope of 18 U.S. Code Section 981 and

6   28 U.S. Code Section 2461.  I am also required by law to tell

7   you that there is an additional special assessment or fine of

8   $100 that is required to be imposed on each count of

9   conviction.

10           Ms. Laforest, you told me a few minutes ago that you

11  are a United States citizen.  The reason I asked you that

12  question was that if you are not a citizen, your guilty plea

13  would likely have adverse consequences for your ability to

14  remain in or return to the United States, including removal,

15  deportation, denial of citizenship, and denial of admission to

16  the United States in the future.

17           Your removal or deportation could be mandatory.  And

18  if that did happen, you would still be bound by your

19  guilty plea.  That is, you would not be able to withdraw it,

20  regardless of any advice you received from your counsel or

21  others regarding the immigration consequences of your plea.

22           Do you understand that?

23           THE DEFENDANT:  Yes, I do.

24           THE COURT:  Ms. Laforest, has anyone threatened you or

25  coerced you in any way in an effort to get you to plead guilty?

1          THE DEFENDANT:  No.

2          THE COURT:  I understand that there is a written plea

3   agreement between you and the government.  It is contained in a

4   letter dated January 26, 2023, addressed to Mr. Goldberg, your

5   attorney, which appears to have your signature on the last

6   page.

7          Did you sign this plea agreement?

8          THE DEFENDANT:  Yes, I did, your Honor.

9          THE COURT:  Did you read it before you signed it?

10         THE DEFENDANT:  Yes, I did.

11         THE COURT:  Did you discuss it with your attorney?

12         THE DEFENDANT:  Yes, I did.

13         THE COURT:  Do you understand its terms?

14         THE DEFENDANT:  Yes, I do.

15         THE COURT:  Has anyone promised you or offered you

16  anything in order to get you to plead guilty, other than what

17  is in this plea agreement?

18         THE DEFENDANT:  No.

19         THE COURT:  It appears that you and the government

20  have reached agreement regarding the appropriate calculation of

21  your sentence under a part of our law known as the sentencing

22  guidelines.

23         Is that correct?

24         THE DEFENDANT:  Yes.

25         THE COURT:  That agreement is that the appropriate

1    guideline sentencing range is from 27 to 33 months and the

2    appropriate monetary fine is from $10,000 to $100,000.  Under

3    this agreement, neither you nor the government is allowed to

4    argue to the sentencing judge for a calculation that is

5    different than the one in this agreement.

6            Do you understand that in this agreement, you have

7    also limited your right to appeal from any sentence that may be

8    imposed?

9            Specifically, do you understand that as long as

10   Judge McMahon sentences you to a prison term of no longer than

11   33 months, any lawful sentence of supervised release, a fine of

12   no greater than $100,000, you are giving up your right to

13   challenge your sentence, whether by direct appeal, writ of

14   habeas corpus, or otherwise?

15           Do you understand that?

16           THE DEFENDANT:  Yes, I do.

17           THE COURT:  Do you also understand that under the

18   terms of this plea agreement, you are waiving any and all

19   rights to withdraw your plea or attack your conviction or

20   sentence, either on direct appeal or collaterally, on the

21   grounds that the government has failed to produce any discovery

22   material, other than information establishing your factual

23   innocence, including Jencks Act material, material pursuant to

24   *Brady v. Maryland*, and impeachment material pursuant to *Giglio*

25   *v. The United States* that has not already been produced as of

1    the date of the signing of your plea agreement?

2            That means that you will not be able to complain about

3    that or withdraw your guilty plea on that basis.

4            Do you understand that?

5            THE DEFENDANT:  Yes, I do.

6            THE COURT:  Ms. Laforest, do you understand that the

7    terms of this plea agreement, including any calculation related

8    to sentencing, are not binding on the sentencing judge?

9            The sentencing judge may reject those calculations and

10   could impose a more severe sentence than you expect without

11   permitting you to withdraw your plea of guilty.  The sentencing

12   judge is required to make her own independent calculation of

13   the appropriate sentencing range under the sentencing

14   guidelines and will also have the discretion to give you a

15   sentence below or above that range, up to the maximum sentence

16   that I told you about earlier.

17           In addition to the guidelines and any possible

18   departures from those guidelines, the sentence judge will also

19   consider the factors set forth in 18 U.S. Code Section 3553(a).

20   In other words, the sentencing judge will pronounce whatever

21   sentence she believes is the appropriate sentence for you, even

22   if that sentence is different from the one in your plea

23   agreement.

24           Do you understand that?

25           THE DEFENDANT:  Yes, I do.

1           THE COURT:  The Court will also consider a presentence

2    report prepared by the probation department in advance of your

3    sentencing.  Before you are sentenced, you and the government

4    will have an opportunity to challenge the facts reported by the

5    probation officer.

6           Do you understand that there is no parole in the

7    federal system?  If you are sentenced to prison, you will not

8    be released on parole.

9           Do you understand that?

10          THE DEFENDANT:  Yes, I do.

11          THE COURT:  Before I go on, let me ask either attorney

12   if there are any other provisions of the plea agreement that

13   you would like me to go over with Ms. Laforest.

14          MR. HORTON:  No.  Thank you, your Honor.

15          MR. GOLDBERG:  No.  Thank you, your Honor.

16          THE COURT:  Ms. Laforest, aside from what is in the

17   plea agreement itself, have any promises been made to you to

18   influence you to plead guilty?

19          THE DEFENDANT:  No.

20          THE COURT:  Have any promises been made to you

21   concerning the actual sentence you will receive?

22          THE DEFENDANT:  No.

23          THE COURT:  Now that you've been advised of the

24   charges against you, the possible penalties you face, and the

25   rights you are giving up, is it still your intention to plead

1    guilty to Count Two of the indictment?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  Is your plea voluntary and made of your

4    own free will?

5              THE DEFENDANT:  Yes, it is.

6              THE COURT:  Ms. Laforest, with respect to Count Two,

7    how do you plead?  Guilty or not guilty?

8              THE DEFENDANT:  Guilty.

9              THE COURT:  Can you please tell me in your own words

10   what you did that makes you guilty of the crime.

11             THE DEFENDANT:  From 2013 up to and including 2020, in

12   the Southern District of New York, I participated with others

13   in an embezzlement scheme in that I charged, via credit card,

14   purchases for my personal use that were then paid by a bank

15   account from an electrical company that my mother was working

16   for.

17             The purchases were not authorized or known by the

18   company.  Electronic bank payment were made to my charge

19   account from my mother's electrical corporation's bank account

20   through telephone and the internet.

21             THE COURT:  Ms. Laforest, did your attorney help you

22   prepare the testimony you just gave?

23             THE DEFENDANT:  Yes, your Honor.

24             THE COURT:  Do you adopt those words as your own?

25             THE DEFENDANT:  Yes.

1          THE COURT:  Is everything you just told me true?

2          THE DEFENDANT:  Yes, it is.

3          THE COURT:  Did you know at the time that you did

4    these acts that what you were doing was wrong?

5          THE DEFENDANT:  Yes, I did.

6          THE COURT:  Mr. Horton, do you believe that there is a

7    sufficient factual predicate for a guilty plea?

8          MR. HORTON:  Yes, your Honor.  Had this matter gone to

9    trial, the government would have introduced, among other

10   things, the following evidence:

11         Witness testimony and records from the victim company

12   regarding Sabitri Laforest's role as the company's controller;

13   her access to and her unauthorized use of the victim's bank

14   account to embezzle $17.1 million; financial records showing

15   that $17.1 million in charges over seven years on a charge card

16   account opened by Tatiana Laforest was paid off using the

17   victim company's bank account; evidence that Tatiana and Sanjay

18   are the adult children of Sabitri and Garry Laforest who were

19   also cardholders on Tatiana's charge card account; evidence

20   from business records and from the defendant's email and iCloud

21   accounts showing the charges the defendants incurred on the

22   charge card account and paid off using the victim company's

23   money, including millions of dollars charged to Sanjay's

24   restaurants which Tatiana helped process, as well as using the

25   charge card to make payments for the restaurant's food and rent

1   expenses; evidence from the defendant's email accounts and

2   credit card companies that Sanjay and Tatiana Laforest lied to

3   multiple credit card processing companies about the nature of

4   the charges incurred using the family's charge card account at

5   the restaurants by creating false invoices so that the credit

6   card companies would process the transactions and send the cash

7   to Sanjay Laforest's business accounts; text messages showing

8   Tatiana Laforest discussing the charge card account with

9   Sabitri and discussing what to do after the scheme unraveled;

10  and charge card company records and bank surveillance videos

11  showing Tatiana Laforest withdrawing tens of thousands of

12  dollars in cash from ATMs around the tristate area using the

13  charge card as a debit card and incurring expenses of $50 per

14  such ATM transaction.

15          As to venue, the government would introduce evidence

16  showing IP information that shows Sabitri Laforest paying off

17  the charge card bill from her office in Manhattan; testimony

18  and records from the charge card company showing that the

19  charge card company processes payments to its cards outside of

20  New York state.

21          And the government would introduce evidence showing

22  that venue is appropriate in the Southern District of New York

23  because the victim company was based in Manhattan, Sanjay's

24  restaurants were located in Manhattan, and Sabitri Laforest

25  paid the charge card bill from her office in Manhattan.

1              THE COURT:  Thank you.

2              Ms. Laforest, on the basis of your responses to my

3    questions and my observations of your demeanor, I find that you

4    are competent to enter a guilty plea.  I am satisfied that you

5    understand your rights, including your right to go to trial;

6    that you are aware of the consequences of your plea, including

7    the sentence that may be imposed; that you are voluntarily

8    pleading guilty; and that you have admitted that you're guilty

9    as charged in Count Two of the indictment.  For these reasons,

10   I will recommend that Judge McMahon accept your plea.

11             Mr. Horton, I assume the government will order a copy

12   of the transcript and will submit it to Judge McMahon together

13   with any additional paperwork.

14             MR. HORTON:  Yes, your Honor.

15             THE COURT:  Has Judge McMahon set a sentencing date?

16             MR. HORTON:  She has not.

17             THE COURT:  Ms. Laforest is out on bail?

18             MR. GOLDBERG:  Yes, your Honor.

19             THE COURT:  I'll set a control date for six months,

20   which is October 21, 2023.  I will direct that the presentence

21   report be prepared.

22             Mr. Horton, can you deliver the case summary for

23   purposes of the presentence report to the probation department

24   within 14 days?

25             MR. HORTON:  Yes, your Honor.

1          THE COURT:  And, Mr. Goldberg, will you be able to be

2   interviewed by the probation department with Ms. Laforest

3   within 14 days?

4          MR. GOLDBERG:  Yes, your Honor.

5          THE COURT:  Thank you.

6          Are there any objections to continuing the present

7   bail?

8          MR. HORTON:  No, your Honor.

9          THE COURT:  Ms. Laforest, all of the conditions on

10  which you were released up until now continue to apply, and a

11  violation of those conditions can have serious consequences,

12  including revocation of bail and prosecution for bail jumping.

13         Do you understand that?

14         THE DEFENDANT:  Yes, I do, your Honor.

15         THE COURT:  Is there anything further from either

16  side?

17         MR. HORTON:  No.  Thank you, your Honor.

18         MR. GOLDBERG:  No.  Thank you, your Honor.

19         THE COURT:  Thank you very much.

20         (Adjourned)

21

22

23

24

25