

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 6, 2023

**BY ECF**

The Honorable Colleen McMahon
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:   *United States v. Sabitri Laforest*, 21 Cr. 272 (CM)

Dear Judge McMahon:

    The Government respectfully submits this letter in advance of the July 13, 2023 sentencing scheduled for defendant Sabitri Laforest. For the reasons set forth below, the Government respectfully submits that a sentence within the applicable Guidelines range of 63 to 78 months' imprisonment would be sufficient but not greater than necessary to serve the purposes of sentencing.

## I.   OFFENSE CONDUCT AND RELEVANT CRIMINAL HISTORY

    Sabitri Laforest is the former controller of Victim-1, a large electrical contracting firm based in Manhattan. (PSR ¶ 13). From at least January 2013 through October 2020, the defendant used her access to Victim-1's bank accounts to embezzle at least $17 million on behalf of herself and her family. (PSR ¶ 30).

    To do so, the defendant linked a Victim-1 bank account used for office expenses to an American Express charge account (the "Laforest Charge Account") controlled by her daughter and codefendant, Tatiana Mays, *née* Tatiana Laforest. (PSR ¶ 12). While Tatiana Laforest was the primary cardholder on the account, the defendant and her husband and codefendant, Garry Laforest, were both secondary cardholders, meaning they were issued their own cards under the same account. (PSR ¶¶ 18, 20).

    Each month, the defendant and her co-conspirators racked up thousands upon thousands of dollars in charges. And each month, several times a month, either the defendant or Tatiana Laforest—primarily the defendant—would pay off the charges they incurred on the Laforest Charge Account by authorizing American Express to debit Victim-1's bank account. (PSR ¶ 21). From 2013 through October 2020, the Victim-1 Bank Account was the *only* bank account the defendants ever used to pay off the charges on the Laforest Charge Account.

The defendants used the Laforest Charge Account in three ways: (1) incurring personal charges; (2) transferring cash to other cash-like accounts; and (3) making charges to and on behalf of restaurant businesses they controlled.

In terms of personal charges, the defendant and her husband charged basically their entire lives to the Laforest Charge Account. They charged the mundane: phone bills, insurance payments, groceries, Ubers, Amazon.com purchases, etc. But their tastes also ran to the extravagant: hundreds of thousands of dollars in travel, years of season tickets to the New York Knicks, thousands of dollars in mail-order caviar delivered to their house in Florida, luxury apartments for their children, fancy clothes, hundreds of thousands of dollars in home renovations, and initial payments to purchase both a brand-new 2019 Chevrolet ZR-1 Corvette (the defendant's car) and a 2020 Ford Shelby GT500 (her husband's car). (PSR ¶¶ 24-25).

In terms of transfers to other cash-like accounts, the defendant and her codefendants also incurred millions of dollars in charges on the Laforest Charge Account to PayPal accounts controlled by the defendant and her codefendants, as well as her other two children not charged in this case, and her daughter-in-law. Once money was transferred to their PayPal accounts, the defendants and their family members could then make other PayPal purchases or make cash transfers to their bank accounts. In addition to PayPal, the defendant and her son, codefendant Sanjay Laforest, opened brokerage accounts with Stockpile, an online trading platform and charged hundreds of thousands of dollars in deposits to their Stockpile accounts using the Laforest Charge Account. (PSR ¶ 26).

Finally, in terms of transfers to and purchases on behalf of restaurants they controlled, the defendant and her codefendants also used the Laforest Charge Account to charge millions of dollars to restaurants they controlled: approximately $390,000 to Mixed Notes Café, a Caribbean restaurant in Elmont, New York, owned by the defendant and her husband; and approximately $2.1 million to a group of hospitality companies owned by Sanjay Laforest. In addition, the defendants also use the Laforest Charge Account to pay for rent and other expenses for the restaurants, to the tune of over $450,000. (PSR ¶ 27).

In September 2020, American Express informed Victim-1 of suspicious activity related to using the Victim-1 bank account to pay off the Laforest Charge Account. (PSR ¶ 12). Victim-1 investigated, confronted the defendant, fired her, and contacted the authorities. (PSR ¶ 13).

In May 2021, a grand jury sitting in this District returned a three-count indictment, charging the defendant with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, wire fraud in violation of 18 U.S.C. § 1343 and 2, and conspiracy to commit money laundering in violation of 18 U.S.C. § 1956. The defendant was arrested on May 12, 2021 in the Southern District of Florida and has remained on pretrial release since her arrest.

## II.   GUILTY PLEA AND APPLICABLE GUIDELINES RANGE

On February 7, 2023, the defendant pleaded guilty before the Hon. Ona T. Wang, U.S. Magistrate Judge, to Count Two of the Indictment, which charged her with wire fraud in violation

of 18 U.S.C. §§ 1343 and 2, pursuant to a plea agreement (the "Plea Agreement"). On March 2, 2023, this Court accepted the defendant's plea.

In the Plea Agreement, the parties stipulated that the defendant's base offense level is 20 pursuant to U.S.S.G. § 2B1.1(a)(1). Because the offense involved a loss of more than $9.5 million but less than $25 million, an increase of twenty levels is warranted, pursuant to U.S.S.G. § 2B1.1(b)(1)(K). Because the defendant abused a position of private trust in a manner that significantly facilitated the commission or concealment of the offense, a two-level increase is warranted, pursuant to U.S.S.G. § 3B1.3. After a three-level decrease for acceptance of responsibility, the defendant's total offense level is 26. The parties further stipulated that the defendant has zero criminal history points and therefore is in Criminal History Category I, resulting in an applicable Guidelines range of 63 to 78 months' imprisonment (the "Guidelines Range"). The Probation Department calculated the same total offense level (PSR ¶ 54), Criminal History Category (PSR ¶ 58), and Guidelines Range (PSR at 31).

### III. DISCUSSION

#### A. Applicable Law

The Sentencing Guidelines provide strong guidance to sentencing courts after *United States v. Booker*, 543 U.S. 220 (2005). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 552 U.S. 38, 46 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 49.

After making that calculation, the Court must consider the factors outlined in 18 U.S.C. § 3553(a), which provides that a sentencing "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection," and sets forth seven specific considerations:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> 
> (2) the need for the sentence imposed—
> 
>   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> 
>   (B) to afford adequate deterrence to criminal conduct;
> 
>   (C) to protect the public from further crimes of the defendant; and
> 
>   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> 
> (3) the kinds of sentences available;
> 
> (4) the kinds of sentence and the sentencing range established [in the Guidelines];

  (5) any pertinent policy statement [issued by the Sentencing Commission];

  (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

  (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

  The Second Circuit has recognized that "[i]n the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006); *see also Kimbrough v. United States*, 552 U.S. 85, 108–09 (2007) ("We have accordingly recognized that, in the ordinary case, the Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." (quotations omitted)).

### B. The Court Should Impose a Guidelines Sentence

  The defendant's offense conduct, the seriousness of the offense, the need to promote respect for the law, and the need to deter future criminal conduct all weigh in favor of a sentence within the Guidelines range of 63 to 87 months' imprisonment. Such a sentence would be sufficient, but not greater than necessary, to serve the purposes of sentencing.

  The defendant led a scheme to steal millions of dollars from her employer for years. She was motivated by pure greed. She did not steal to pay her rent, or put food on the table. Rather, she stole from employer so that she and her family could purchase sports cars. Caviar. Knicks tickets. Travel. Home renovations. Tennis lessons. This was a woman who had already done well for herself and her family, but then saw an opportunity to take more, and took it.

  Not only did the defendant and her husband take full advantage of her access to company funds, they also embroiled their children in their fraud. To be sure, defendants Tatiana and Sanjay Laforest are also responsible for their conduct and should be sentenced by this Court accordingly. But the Government believes them to be substantially less culpable than their parents given that the evidence shows that the scheme was originated by and driven by the defendant and her husband, who had access to the Victim-1 account, made the bulk of the charges, and paid the bill multiple times each month. For this reason, the Government stipulated to lower loss amounts for Tatiana and Sanjay Laforest given disputes over when they realized—or consciously avoided learning—that their parents' largesse was paid for by fraud. Moreover, the defendant and her husband also brought their other, uncharged children into the scheme by sending them money and benefits paid for with Victim-1's stolen money.

  To be sure, the defendant faces harsh consequences, including mandatory deportation from her home in the United States. ███████

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ But this does not overcome the brazen nature and sheer magnitude of her crimes.

Accordingly, the Government seeks a Guidelines sentence. A sentence in this range would serve several of the purposes of sentencing. It would reflect the history and characteristics of this defendant. It would also promote respect for the law and provide adequate deterrence by sending a message that people who steal millions of dollars from their employers will serve significant time in federal prison for such conduct.

## IV.   CONCLUSION

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence below the applicable Guidelines Range of 63 to 78 months' imprisonment.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by:   /s/
Matthew R. Shahabian
Assistant United States Attorney
(212) 637-1046

CC:   Donna Newman, Esq. (by ECF)